Naomi L. HUBBARD and Oliver G. Hubbard, husband and wife,

v.

COMMONWEALTH Of Pennsylvania, DEPARTMENT OF TRANSPORTATION and City of Philadelphia.

Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 8, 1995.
Decided June 7, 1995.

John J. Calabro, Deputy Atty. Gen., for appellant.

I. Michael Luber, for appellees, Naomi L. and Oliver G. Hubbard.

Alan C. Ostrow, Deputy City Sol., for appellee, City of Philadelphia.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania, Department of Transportation (PennDOT), appeals a decision of the Court of Common Pleas of Philadelphia County (trial court) affirming a jury award finding PennDOT responsible for damages Naomi Hubbard (Hubbard) incurred from falling on a defective median strip on Spring Garden Street located in Philadelphia, Pennsylvania.

On December 16, 1987, Hubbard was crossing Spring Garden Street, a state highway divided by a median strip. The median strip, which was raised above the highway, consisted entirely of concrete. As Hubbard was stepping onto the uneven outer edge of the median strip, she fell and fractured her ankle. Hubbard subsequently brought a negligence action in the trial court against PennDOT and the City of Philadelphia (City).

Both PennDOT and the City disputed that they had any responsibility for the defective condition of the median strip. When initially opened, Spring Garden Street was a City street, but, by the Act of May 7, 1937, P.L. 589, No. 153, *as amended*, 36 P.S. §§ 961–1 to 961–16 (repealed in part), it was taken over as a state highway and designated as LR 67030. This Act originally exempted the Commonwealth from maintenance responsibilities for "any structure of any kind or character, whatsoever situate, upon or forming a part of any city street, or section thereof" taken over by the Act. However, the 1937 Act was amended by the Act of July 10, 1941, P.L. 345, No. 141, *as amended*, 36 P.S. §§ 961–1 to 961–16 (repealed in part), to delete the section that exempted the Commonwealth from any maintenance responsibility for highway structures. The 1941 Act only exempted the Commonwealth from any "obligation to repair and maintain the curbing and footways of any such street [taken over as a state highway]." 36 P.S. § 670–542.

PennDOT contended that it was not responsible for that portion of the strip where Hubbard fell, characterizing the strip as a "curb" for which it has no responsibility.[1] The City contended that the median strip could not be considered a curb and that PennDOT had assumed responsibility for its maintenance. The trial was bifurcated for an initial non-jury determination of whether PennDOT or the City owned, controlled, and maintained the median strip.[2]

During the initial phase of the trial, Hubbard indicated the exact location where she fell by placing an "X" on the edge of the median. Hubbard and all other witnesses, including engineers for PennDOT and the City, subsequently referred to this location as being a "curb." Moreover, several witnesses stated that the purpose of the median strip measures approximately four feet wide and does not extend for the entire length of the block. Additionally, the witnesses stated that the median was not designed as a sidewalk, but rather, to divide or direct the flow of traffic.

The parties also introduced evidence attempting to establish whether PennDOT or the City had previously performed any work on the median strip. This evidence included the following:

1. An excerpt from a PennDOT maintenance book indicating that repairs had been made on the island, but not specifying who made the repairs;

2. A PennDOT complaint form indicating that utility repairs were made on a median strip, but not specifying who made the repairs;

3. Reports of defects in median strips written by PennDOT and allegedly forwarded to the City that, again, do not specify who repaired the defects;

4. Testimony indicating that utilities are responsible for repairing any holes that they make in median strips; and

5. A PennDOT street line diagram indicating the width of Spring Garden Street as being 80 feet from curb to curb, but not excepting the median strip and not indicating which party is responsible therefor.

Furthermore, a PennDOT county maintenance manager testified that he had seen City employees mowing the grass on other traffic islands in the past, but that he was unsure whether City employees had ever performed any concrete work on the islands. In fact, none of the evidence presented established which party had maintained or repaired the median strip in the past. Moreover, no evidence was introduced to prove an agreement or understanding between PennDOT and the City as to which party was responsible for the median strip.

The trial court specifically rejected the witnesses' classification of the location of Hubbard's fall as being a "curb," stating that such a classification was based on a legal determination. Looking to the State Highway Law of 1945,[3] and finding that the median strip functions as a physical barrier on a state highway and not as a sidewalk for pedestrians, the trial court concluded that the location of Hubbard's fall was not on a curb, but instead, on "the outer edge of the north side of the median," a portion of the state highway. Accordingly, the trial court concluded that PennDOT was liable for the repair and maintenance of the area in question. After its post-trial motions were denied, PennDOT appealed to this Court.

Pursuant to Section 8522 of the Judicial Code, the Commonwealth may be held liable for injuries arising out of a dangerous condition of highways under the jurisdiction of a Commonwealth agency. 42 Pa.C.S. § 8522. The stretch of Spring Garden Street at issue

---

1. Before this Court, PennDOT also contends that, because it regulates the flow of traffic, the median is a traffic control device for which PennDOT was not responsible. PennDOT did not, however, raise this issue in its post-trial motions or in its brief in support thereof, and therefore, has waived it for purposes of appellate review. *Smith v. Shaffer,* 511 Pa. 421, 515 A.2d 527 (1986); *Borough of Kennett v. Lal,* 165 Pa.Commonwealth Ct. 573, 645 A.2d 474 (1994).

2. In the second portion of the trial, which was before a jury, negligence was apportioned between Hubbard and PennDOT. This determination is not at issue in the present appeal.

3. 36 P.S. § 670–542.

in this case was brought within the jurisdiction of PennDOT for maintenance of the roadway, but not for curbings and footways, by the General Assembly via 36 P.S. § 961–2; § 670–542. Given this statutory scheme, the issue presented in this case is whether the edge of the median strip is a curb, as intended by the General Assembly, thereby removing it from the jurisdiction of PennDOT and making it the responsibility of the City.

PennDOT contends that, since the undisputed testimony of the engineers referred to the location of Hubbard's fall as being a "curb," the trial court erred in concluding that it was not a curb and in imposing liability on PennDOT. Contrary to PennDOT's assertion, and in accord with the trial court's approach, what is at issue in this case is not a factual determination, but whether the General Assembly intended to include median strips within the terms curbs and footways which are excluded from the Commonwealth's obligation to maintain and repair highways.

■■ Because neither a curb nor a footway was defined by the General Assembly when it did so, we must resort to the rules of statutory construction to determine their meanings. *See Browning–Ferris, Inc. v. Department of Environmental Resources,* 143 Pa.Commonwealth Ct. 251, 598 A.2d 1061 (1991). In this regard, words and phrases are to be construed according to their common and approved usage. 1 Pa.C.S. § 1903(a). Furthermore, if a word has acquired a peculiar and appropriate meaning, then it shall be interpreted in accordance with that meaning. *Id.*

■■ A curb, as that term is commonly used, is a raised edging serving as a border between that portion of the right-of-way for which a public body has assumed maintenance responsibilities and that portion still retained by the abutting property owner.

Public bodies normally assume responsibility for property within the curb lines, i.e., the gutters and the roadway or cartway. On the other hand, the abutting property owner retains responsibility for the conditions outside the curb lines, i.e., the sidewalk, the tree planting strip, and the curb itself. *Fisher v. City of Philadelphia,* 112 Pa.Superior Ct. 226, 170 A. 875 (1934). Absent some deed or dedication requirement, by definition, for there to be a curb, there must be an abutting property owner with maintenance responsibilities.[4]

PennDOT also defines curbs in a similar manner in its regulations. 67 Pa.Code § 211.1 defines a curb as a "vertical or sloping member generally along and defining the edge of a roadway." Moreover, the regulations also define a curb line as being the "boundary between a roadway and a sidewalk, usually marked by a curb." 67 Pa. Code § 211.1. Additionally, the regulations also define a sidewalk as "[t]hat portion of a street between the curb lines, or the lateral lines of roadway, and the adjacent property lines, *intended for the use of pedestrians.*" 67 Pa.Code § 211.1 (emphasis added).[5] Furthermore, a median is defined by the regulations as being the "portion of a divided highway separating traveled ways for traffic in opposite directions." *Id.*

■■ Here, given the testimony indicating that the location in issue was designed to divide the flow of traffic on Spring Garden Street, the trial court did not err in concluding that it was a median instead of a sidewalk. The testimony supports the conclusion that the median was not intended for use by pedestrian traffic, and that it did not extend for the entire length of Spring Garden Street between 18th and 19th Streets. Moreover, unlike the normal allocation of maintenance responsibilities for sidewalks and curbs, no abutting property owner was responsible for

---

4. Additionally, the law of municipal corporations, including the Borough Code, has repeatedly referred to the curbing and paving of sidewalks. *See* 53 P.S. § 57303; *In re Morewood Ave.,* 159 Pa. 20, 28 A. 123 (1893); *Township of Mount Lebanon v. Hobbes,* 201 Pa.Superior Ct. 30, 189 A.2d 316 (1963). In the context of townships assessing property owners for improvements on streets, this law has repeatedly

alluded to curbing and paving of sidewalks in front of properties abutting streets and state highways. *Id.* Curbing and paving has never been used to address the construction of or maintenance of medians.

5. 75 Pa.C.S. § 102 sets forth the same definition of a sidewalk as does 67 Pa.Code § 211.1.

any maintenance of any portion of the median strip. Given that the location where Hubbard fell is a median, and not a sidewalk, the *sloping portion thereof is part of the median and not a curb.* Accordingly, the trial court did not err in concluding that PennDOT is responsible for any injuries resulting from the defective maintenance of the median.

PennDOT also contends that it is entitled to a new trial because the trial judge improperly refused to recuse himself after making a statement regarding the negative impact of the 1941 amendment to 36 P.S. § 961–2 on PennDOT's case. The following colloquy occurred between the trial judge and PennDOT's counsel:

THE COURT: A curb is not defining the edge of the roadway here. The entire roadway is between the north side of Spring Garden Street and the south side of Spring Garden Street. That's a structure. It doesn't mean that it's not still part of the highway.

Furthermore, the curb line, the next definition below indicates that it's a boundary between a roadway and a sidewalk, and the island is not a sidewalk.

What it boils down to is the 1941 amendment hurts your case.

COUNSEL: Is that your decision, Judge?

THE COURT: Pretty close to it unless you can show me why I'm wrong.

COUNSEL: Well, no offense, but I would now make a motion to preclude you from hearing this case nonjury since you already made your determination before the—

THE COURT: I haven't made my determination.

Based upon this colloquy, PennDOT now contends that the trial judge should have recused himself.

 Merely expressing an opinion regarding the status of the law as it applies to a particular case by no means amounts to the prejudice or bias that would warrant the recusal of a trial judge. *See Borough of Kennett Square v. Lal,* 164 Pa.Commonwealth Ct. 654, 643 A.2d 1172 (1994). While it is somewhat understandable how such a meritless argument could be made during the heat of trial, it is puzzling, after having time to reflect, how PennDOT can still pursue this contention before this Court. To adopt the reasoning advanced upon us would lead to the absurd result of every judge having to recuse himself or herself because he or she expressed a belief as to the status of the law during the course of a trial.

Accordingly, the decision of the trial court imposing liability on PennDOT is affirmed.

### ORDER

AND NOW, this 7th day of June, 1995, the order of the Court of Common Pleas of Philadelphia County at No. 3694, August Term, 1988, dated April 20, 1994, is affirmed.