Connie SLOUGH

v.

**CITY OF PHILADELPHIA and Commonwealth of Pennsylvania, Department of Transportation.**

**Appeal of COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, Appellants.**

Connie SLOUGH

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION and City of Philadelphia.**

**Appeal of CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 1996.
Decided Dec. 9, 1996.

Robert Gallagher, Philadelphia, for appellant, Department of Transportation.

Alan C. Ostrow, Philadelphia, for appellant, City of Philadelphia.

Wayne R. Maynard, Philadelphia, for appellee, Connie Slough.

Before COLINS, President Judge, LEADBETTER, J., and KELTON, Senior Judge.

KELTON, Senior Judge.

The City of Philadelphia and the Pennsylvania Department of Transportation (DOT) have appealed from a February 21, 1996 order of the Philadelphia Court of Common Pleas finding both parties equally liable for personal injuries sustained by Appellee Connie Sough in a fall on a median on Bustleton Avenue, a *state-owned* highway within the City. We affirm in part and reverse in part.

Slough fell getting off a bus on October 11, 1991, on a defective concrete median.[1] She fractured her right shoulder and lost approximately eleven months of work. Her claim for damages against both the City and DOT was assigned to compulsory arbitration. On September 16, 1994, the arbitration panel issued an award in favor of Slough against DOT only, in the amount of $30,000, less 40% comparative negligence, for a net award of $18,000. DOT appealed to the trial court, which concluded that the median was both a traffic control device, for which the City was responsible, and part of the highway, within DOT's control. The court found the City and DOT equally liable for Slough's injuries, and both parties filed motions for post-trial relief. The motions were denied, and the City and DOT have now appealed to this Court.

The sole issue for our review is whether the median is a "traffic control device" or part of the highway. At trial, a DOT engineer testified that the island where Slough fell was a "traffic control island," which separates opposing directions of traffic, channelizes traffic for left turning movements at the intersection, and acts as pedestrian refuge. As such, DOT claims that maintenance of the island is the responsibility of the City. It is the City's position that the median was not a traffic control island, but a permanent fixture of the road, for which DOT alone is responsible.

Bustleton Avenue came under DOT's authority in 1961, subject to the provisions of the State Highway Act of 1961 (the Act), Act of September 18, 1961, P.L. 1389, *as amended*, 36 P.S. §§ 1758–101—1758–701. The Act sets forth DOT's duties and obligations with regard to the state highways designated therein, and also specifies those activities for which DOT is not responsible. Section 203 of the Act provides as follows:

This act is not intended and shall not be construed:

(1) To place upon the Commonwealth any duty to regulate traffic or police the streets herein taken over by the Commonwealth but such duty shall be and remain the obligation of the cities.

(2) To place upon the Commonwealth any obligation for the maintenance, construction, reconstruction or resurfacing of said

---

1. In its opinion, the trial court referred to the median as "the structure," and in their briefs, the parties refer to it as a "median" or a "traffic island." DOT regulations define "median" as "the portion of a divided highway separating the traveled ways for traffic in opposite directions," and "island" as an "area within a roadway from which vehicular traffic is intended to be excluded for the purpose of controlling and directing specific movements of traffic to definite channels." 67 Pa.Code § 211.1. Without attempting to draw any distinctions between these definitions, we will call the structure at issue a median.

streets other than the base or surface courses.

. . . .

(4) To place upon the [DOT] any authority to regulate traffic, parking or the general use by the traveling public of the streets or sections thereof taken over by this Commonwealth for maintenance or improvement under the provisions of this act.

36 P.S. § 1758–203. Pursuant to Section 203, DOT would be responsible for maintaining the median on which Slough fell only if it were part of the "base or surface course" of the roadway. Moreover, under this provision, DOT has no duty to regulate traffic on Bustleton Avenue. If the purpose of the median is to regulate or control traffic, then it is within the City's responsibility.

The trial court's findings of fact noted the testimony of a DOT witness that the median lay *on top of* a stone sub-base, which is *underneath* the concrete and surface course of black top, and extended several inches above the surface. (Finding of Fact No. 6; slip op. at 5.) Based on this evidence, the trial court concluded that the median goes through the surface and base courses of Bustleton Avenue and is, therefore, part of the highway.[2] Accordingly, the court found that DOT had a duty to maintain the median.

The trial court also found that the median was designed as a "traffic island"—for the purposes of dividing or separating north and southbound lanes of traffic, to channelize or guide northbound motorists into a left-turn lane and as a pedestrian refuge. (Finding of Fact No. 2(c); slip op. at 4.) The court concluded that the median was a traffic control island with the purpose of regulating traffic on Bustleton Avenue. As such, the court concluded that the City also has a duty to maintain the structure.

■ We agree with the trial court that DOT is responsible for maintaining the median in this case. Such a structure is part of

the highway, not a traffic control device over which DOT would have no control. The Vehicle Code defines highway as "[t]he entire width between the boundary lines of every way publicly maintained *when any part thereof* is open to the use of the public for purposes of vehicular travel." 75 Pa.C.S. § 102. Moreover, DOT regulations define "median" as "[t]he portion of a divided highway separating the traveled ways for traffic in opposite directions." 67 Pa.Code § 211.1. Clearly, a median is between the boundary lines of a highway, and by definition, a portion thereof. We note also that the median on Bustleton Avenue was actually constructed by DOT. (R.R. at 149a.)

■ We do not agree with the trial court that the City is in any way responsible for maintaining the median as a traffic control. Under the applicable exception to governmental immunity, the City may be liable for a "dangerous condition of trees, traffic signs, lights or other traffic controls" under its care, custody or control. Section 8542(b)(4) of the Judicial Code, 42 Pa.C.S. § 8542(b)(4). This exception must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability. *Lory v. City of Philadelphia*, 544 Pa. 38, 674 A.2d 673 (1996). *See also Kiley by Kiley v. City of Philadelphia*, 537 Pa. 502, 645 A.2d 184 (1994) (exceptions to governmental immunity are to be strictly construed).

The Judicial Code does not define the phrase "traffic control" as used in the exception to immunity. Section 102 of the Vehicle Code, 75 Pa.C.S. § 102, however, does define "traffic-control signal" and "official traffic-control device." A traffic-control signal is "[a] device, whether manually, electrically or mechanically operated, by which traffic is alternatively directed to stop and permitted to proceed." Official traffic-control devices are "[s]igns, signals, markings, and devices ... for the purpose of regulating, warning or guiding traffic." Further, DOT regulations define "traffic signal" as a "power-operated

---

**2.** The trial court noted that its conclusion that the median was part of the highway was consistent with our decision in *Hubbard v. Department of Transportation*, 660 A.2d 201 (Pa.Cmwlth. 1995). We do not agree, however, that *Hubbard*

is applicable to the case at bar. In *Hubbard,* we did not address the issue of whether a median is a traffic control device, because we concluded that DOT had waived it. 660 A.2d at 203 n. 1.

traffic control device . . . by which traffic is warned or directed to take some specific action." 67 Pa.Code § 211.1.

In *Garrett v. Moyston,* 127 Pa.Cmwlth. 488, 562 A.2d 386 (1989), this Court interpreted the phrase "traffic controls" in the "trees, traffic controls and street lighting" exception to immunity to determine if the City of Philadelphia could be liable for negligently designating a bus stop. We applied the Vehicle Code definitions of "traffic control signal" and "official traffic control devices" to determine that a bus stop does not constitute a "traffic control" within the meaning of Section 8542(b)(4) of the Judicial Code. In our analysis we also construed Section 3111(a) of the Vehicle Code, which provides in pertinent part:

> **(a) General rule.**—Unless otherwise directed by a uniformed police officer or any appropriately attired person authorized to direct, control or regulate traffic, the driver of any vehicle shall obey the instructions of any applicable official traffic-control device placed or held in accordance with the provisions of the this title, subject to the privileges granted the driver of an authorized emergency vehicle in this title.

75 Pa.C.S. § 3111(a). Recognizing that the definition of "official traffic control device" must be read in *pari materia* with Section 3111(a), we concluded that a bus stop is not such a device because a driver cannot "obey the instructions of" a bus stop. *See also Miseo v. Ross Township Police Department,* 147 Pa.Cmwlth. 263, 607 A.2d 806 (1992) (flare is not an official traffic control device because it does not specify any particular action which a driver must perform).

Similarly, in *Aberant v. Wilkes–Barre Area School District,* 89 Pa.Cmwlth. 516, 492 A.2d 1186 (1985), we concluded that a school bus, stopped with lights flashing, was not a traffic control signal, as defined in Section 102 of the Vehicle Code. Noting that although a school bus may, at times, direct traffic to stop, we concluded that it is not "a device" by which traffic is alternately directed to stop or proceed. Accordingly, we held that the school bus was not a traffic control

within the meaning of the Section 8542(b)(4) exception.

In the case at bar, we must determine if a median is a traffic control within the Section 8542(b)(4) exception. The Vehicle Code definitions for traffic control signal and official traffic control device do not include any reference to a median, which is certainly not a device, sign, signal, or marking. Under the regulatory definitions of median and island, *see supra.* at n. 1, the purpose of such structures is to separate or "channelize" lanes of travel. A median or island is a "traffic control" in only the broadest sense of the term, acting merely as a means of keeping one lane of travel from running into another. Therefore, strictly construing the phrase "traffic control," as used in the Section 8542(b)(4) exception to governmental immunity, the City cannot be liable for the dangerous condition of the median in this case.

Accordingly, we reverse that portion of the trial court's decision finding the City liable for Slough's injuries, and affirm that portion finding DOT liable.

### ORDER

AND NOW, this 9th day of December, 1996, the February 21, 1996 order of the Court of Common Pleas of Philadelphia County is hereby reversed in part and affirmed in part. We reverse that portion of the order finding the City of Philadelphia liable for Slough's injuries, and affirm that portion finding the Department of Transportation liable.