720 A.2d 485

**Connie SLOUGH, Appellee,**

**v.**

**CITY OF PHILADELPHIA and Commonwealth of Pennsylvania, Department of Transportation, Appellants.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

Supreme Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided Nov. 23, 1998.

---

674

Janet Selden, Alton G. Grube, Philadelphia, for the Com., DOT.

Wayne Maynard, Philadelphia, for Connie Slough.

Alan C. Ostrow, Philadelphia, for City of Philadelphia.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## ORDER

PER CURIAM.

AND NOW, this 23rd day of November, 1998, the order of the Commonwealth Court is affirmed on the basis of its opinion. *Slough v. City of Philadelphia and Commonwealth of PA, Department of Transportation,* 686 A.2d 62 (1996).

CASTILLE, J., files a dissenting statement.

CASTILLE, Justice, dissenting.

I agree with the majority that the Department of Transportation (PennDot) is liable in this matter and I concur in the *per curiam* Order affirming the Commonwealth Court on that issue. However, I believe that the City of Philadelphia ("City") also bears liability in this matter under the relevant immunity provision. Consequently, I dissent from the majority's *per curiam* Order insofar as it affirms the Commonwealth Court's conclusion that the City is not liable in this matter.

Appellee, Connie Slough, initiated the instant action against the City of Philadelphia and PennDot, alleging that on October 11, 1991, she fell on a defective concrete median island on Bustleton Avenue, which is located within the City limits. Appellee contended that the City and/or PennDot bore responsibility for maintaining the median. Compulsory arbitration resulted in an award of $ 18,000 in favor of appellee and against PennDot only. PennDot appealed that decision

whereupon, by stipulation of the parties, a bench trial was held. The trial court found in favor of appellee, and against both PennDot and the City. Specifically, the trial court found PennDot liable for $16,000 and the City liable for $2,000. In a published opinion, the Commonwealth Court affirmed that part of the trial court's order finding PennDot liable, but reversed that part of the trial court's order finding the City liable.

In determining that the City was not liable, the Commonwealth Court looked to the Governmental Immunity Act (the "Act"), 42 Pa.C.S. §§ 8541 *et seq.* The Act provides that the City is liable for a dangerous condition of, *inter alia,* "traffic signs, lights *or other traffic controls."* 42 Pa.C.S. § 8542(b)(4)(emphasis added). At issue here is whether the median may properly be deemed a "traffic control" under the Act. For the following reasons, I believe that the median may properly be deemed a "traffic control" and that the Commonwealth Court erred by concluding otherwise.

The phrase "traffic control" is not defined in the Act; therefore, the phrase must be construed in accordance with its plain meaning. *See Southco., Inc. v. Concord Twshp.,* 552 Pa. 66, 713 A.2d 607, 609 (1998); *Commonwealth v. Johnson,* 542 Pa. 568, 578, 669 A.2d 315, 321 (1995). "Control" is defined as the "power to direct or regulate;" and "the condition of being directed or restrained." Webster's Second New World Dictionary (1986). "Traffic" is defined as "the movement . . . of automobiles along a street." *Id.* Thus, a "traffic control" is something which directs, regulates or restrains the movement of automobiles along a street. By separating the lanes of opposing traffic on a divided highway, a median regulates and restrains the movement of automobiles along that highway. Therefore, a median is manifestly a "traffic control."

Furthermore, although the Act itself does not define the phrase "traffic control," the phrase "official traffic control devices" is defined as follows in section 102 of the Vehicle Code "signals, markings and devices . . . for the purpose of regulating, warning or guiding traffic." Although "device" is not defined with further specificity, the word is commonly

understood to mean "a thing devised [worked out or created]; a plan or scheme." Webster's Second New World Dictionary (1986). Since a median is a thing which is "devised" (or "created") for the purpose of regulating and guiding traffic, the foregoing definition of "official traffic control devices" lends further support to the conclusion that a median is a "traffic control" for purposes of the Governmental Immunity Act. *See Eastern Investment Co. v. Bd. of Finance and Revenue*, 531 Pa. 510, 513, 614 A.2d 223, 225 (1992) (in interpreting the phrase at issue, this Court looked to definitions contained in other code provisions when the relevant Act did not provide the definition).

The Commonwealth Court, in applying the axiom that exceptions to governmental immunity shall be narrowly construed, determined that "a median or island is a 'traffic control' in only the broadest sense of the term, acting merely as a means of keeping one lane of travel from running into another." *Slough v. City of Phila.*, 686 A.2d 62, 65 (Pa. Commw.1996). I agree that exceptions to governmental immunity must be narrowly construed. *Kilgore v. City of Phila.*, 553 Pa. 22, 717 A.2d 514 (1998) (Castille, J., dissenting); *Mickle v. City of Phila.*, 550 Pa. 539, 707 A.2d 1124, 1127 (Pa.1998) (Castille, J., dissenting); *Jones v. Chieffo*, 549 Pa. 46, 54, 700 A.2d 417, 421 (1997) (Castille, J., dissenting). However, I am puzzled by the Commonwealth Court's conclusion that a median is a traffic control only in the "broadest" sense of the term. This seems to imply that there is a narrower understanding of the phrase "traffic control" under which a median would be excluded. However, the Commonwealth Court does not explain what this narrower sense of the phrase might be. Given the foregoing definitions, I fail to see how a median could ever be anything but a "traffic control," even under the most narrow possible construction of "traffic control." Consequently, I am constrained to disagree with the conclusion reached by the Commonwealth Court that the City of Philadelphia is not liable in this matter, and to dissent from this Court's *per curiam* affirmance of the Commonwealth Court on that issue.