# Morton v. PennDOT

*Robert Howard Nemeroff,* for plaintiff.
*Janet Selden,* for defendant.

QUIÑONES ALEJANDRO, *J.,* April 4, 2003—

OPINION[1]

INTRODUCTION

Commonwealth of Pennsylvania, Department of Transportation (defendant PennDOT) argues on appeal that this trial judge erred in denying its motion for post-trial relief. This trial judge disagrees.

RELEVANT FACTUAL AND
PROCEDURAL HISTORY

On December 19, 2002, the Commonwealth of Pennsylvania, Department of Transportation (PennDOT),

---

1. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and an order dated March 12, 2003, defendant PennDOT was instructed to file of record and Serve Unto this trial judge a statement of matters complained of on appeal. Defendant PennDOT has not filed *of record* the statement of matters complained of on appeal. Thus, defendant PennDOT can be considered to have waived its appellate arguments. Notwithstanding and in the interest of judicial economy, this opinion is being issued.

Southeastern Transportation Authority (SEPTA) and the City of Philadelphia (collectively, defendants) settled the underlying case with Alfred Morton (plaintiff) and requested the court's intervention to determine and apportion liability among defendants with regard to the payment of the settlement amount. On December 30, 2002, a non-jury trial before this trial judge was held on the following stipulated facts and legal argument:

"On June 27, 2000, at approximately 1 a.m., plaintiff was walking along a traffic island located between Broad Street and Old York Road, just south of Olney Avenue, in Philadelphia, Pennsylvania, when he tripped over an alleged defect on the traffic island and fell.

"On June 22, 2001, plaintiff filed a civil action against defendants PennDOT, SEPTA, and the City of Philadelphia. Discovery on this matter concentrated on determining who owns, controls, and/or maintains the traffic island, accident situs where plaintiff fell. This particular traffic island is a long, narrow, raised concrete island that separates traffic on Broad Street from traffic on Old York Road, at a point where the two streets merge in almost a parallel or side-by-side fashion.

"It is undisputed that Broad Street was adopted as a state highway pursuant to the State Highway Act 615, September 18, 1961, Legislative Route No. 67312, State Route 611 (1961 Highway Act). All state highways are under the jurisdiction of defendant PennDOT. It is further undisputed that the west curb of the traffic island is adjacent to Broad Street, and that the east curb line of the traffic island is adjacent to Old York Road, a public highway under the jurisdiction of defendant City.

"The parties agree that in 1973, defendant PennDOT constructed the traffic island as part of a Federal Aid Project called Traffic Operations Program to Increase Capacity and Safety (TOPICS), in a joint venture with defendant City. The program was financed with federal funds and contributions from both the Commonwealth of Pennsylvania and the City of Philadelphia. At the time of the project, defendants City and PennDOT entered into a written agreement to allocate the costs of the project on a percentage basis. Defendants City and PennDOT were to have agreed as to whom was responsible for maintaining the various street improvements and traffic control devices that were being built.[2] The project specifically included Broad Street just south of Olney Avenue comprising the traffic island in question, then northerly to Broad Street extending beyond Grange Street.

"Photographs of the accident site revealed a pothole on the traffic island. The photographs also revealed that the original east curb line of the traffic island (on the side of Old York Road) had been saw cut to widen the street for SEPTA buses to turn and travel. No one knows who authorized or, in fact, actually saw cut the traffic island to widen the travel lane for SEPTA buses along Old York Road between Tabor Road and Olney Avenue. However, it was recognized that the only entity to benefit from the widening of Old York Road near the traffic island is defendant SEPTA.

"In 1984, defendant SEPTA undertook certain improvement projects at its Olney Transportation Terminal

---

2. The parties were unable to uncover any maintenance agreement.

which involved Tabor Road and Old York Road near the traffic island. There is a bus shelter on the traffic island approximately 60 feet from the site of the accident.

"No evidence was presented as to who maintains and/or repairs the traffic island. None of the defendants could provide any agreement or understanding between any defendant as to which party was responsible for the traffic island."

Each defendant represented a different legal argument:

"Defendant SEPTA contends it has no legal duty to maintain the traffic island because it does not own or possess it, nor did it build this traffic island. Defendant SEPTA further contends that plaintiff's claim against it is barred by the provisions of sovereign immunity as provided by 42 Pa.C.S. §8541 et seq.

"Defendant PennDOT essentially contends that the accident occurred on a traffic island, which is also a traffic control device, under the jurisdiction of defendant City.

"Defendant City essentially contends that defendant PennDOT built the traffic island adjacent to a state-designated highway and was to maintain it and, therefore, defendant PennDOT is liable for plaintiff's injuries."

Following the one-day non-jury trial, this trial judge found defendant PennDOT *solely* liable to plaintiff for the settled amount, and ordered defendant PennDOT to reimburse defendants City and SEPTA the amount each contributed toward the settlement with plaintiff.

On January 8, 2003, defendant PennDOT filed a post-trial motion. Defendants SEPTA and City filed re-

sponses, and oral argument was scheduled for and heard on February 25, 2003. By order dated February 25, 2003, this trial judge denied defendant PennDOT's post-trial motion.

Dissatisfied, defendant PennDOT on March 7, 2003, filed an appeal to the Commonwealth Court.

## ISSUE

In response to an order issued in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), defendant PennDOT on March 21, 2003, served unto this trial judge *only,* a statement of matters complained of on appeal and argues that this trial judge erred:

"(1) in finding that the traffic island located on Old York Road was within the Commonwealth's party maintenance responsibility pursuant to 36 Pa.C.S. §1758-201 et seq. and 42 Pa.C.S. §8522(b)(4);

"(2) in misapplying *Slough v. City of Philadelphia,* 686 A.2d 62 (Pa. Commw. 1996), *affirmed,* 553 Pa. 673, 720 A.2d 485 (1998), in that *Slough* held that a traffic island within the curb lines of a state designated highway (two state-designated highways) is under the jurisdiction of the Commonwealth party maintenance responsibility, whereas, in the case at bar, the accident situs is a traffic island located outside the curb line of a state-designated highway and adjacent to a City of Philadelphia street, Old York Road;

"(3) in ignoring controlling statutes, 36 Pa.C.S. §1758-201 et seq.;

"(4) in weighing the evidence; to wit: was there competent evidence offered at trial that the situs of plain-

tiff's accident was owned, possessed, or controlled by the Commonwealth party?;

"(5) in finding that plaintiff's cause of action fell within the nine [sic] limited exceptions to sovereign immunity, 42 Pa.C.S. §8522 (b); and

"(6) in misapplying the definition of a traffic island (a term of art) by ignoring and not recognizing it as an official traffic control device as defined in the Uniform Manual of Traffic Control Devices, 1971 edition and all subsequent editions, codified at 67 Pa. Code §211.4(a), (b) and at 75 Pa.C.S. §6121.

## LAW AND DISCUSSION

Since the defendants stipulated to the facts in this case, the non-jury trial consisted of legal argument by defendants on the determinative issue of the ownership, control and/or maintenance of the traffic island. In rendering the legal conclusions in this matter, this trial judge relied primarily on the holdings of *Slough v. City of Philadelphia,* 686 A.2d 62 (Pa. Commw. 1996), *aff'd,* 553 Pa. 673, 720 A.2d 485 (1998), and *Hubbard v. PennDOT,* 660 A.2d 201 (Pa. Commw. 1995), and the provisions of sovereign immunity as defined in title 42 Pa.C.S. §8541 et seq. Defendant PennDOT contends that this trial judge erred in its conclusion, and filed a post-trial motion which was subsequently denied.

In a non-jury matter, a trial court has inherent power to grant a new trial if it concludes that a factual or legal mistake was made at the trial level and, on consideration of the particular circumstances of the case, the mistake formed a sufficient basis to order a new trial. *Eighth*

*North-Val Inc. v. William L. Parkinson D.D.S., P.C., Pension Trust,* 773 A.2d 1248, 1251 (Pa. Super. 2001). The power to grant or deny a motion for a new trial lies within the discretion of the trial judge and that court's decision will not be overturned on review unless the court acted capriciously or palpably abused its discretion. *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985). The findings of the judge in a bench trial are given the same weight and effect as a jury verdict such that the court's findings will not be disturbed on appeal absent an abuse of discretion, error of law, or lack of support in the record. *Good v. Holstein,* 787 A.2d 426 (Pa. Super. 2001), *appeal denied,* 568 Pa. 732, 798 A.2d 1290 (2002); *Turney Media Fuel v. Toll Bros. Inc.,* 725 A.2d 836, 841 (Pa. Super. 1999). (citation omitted) Where the trial court sat as the finder of facts in a non-jury trial, its authority to grant a new trial to correct an error of law or injustice is enhanced, and the appellate court's authority to override the trial court's decision is proportionately diminished. *Brown v. Philadelphia College of Osteopathic Medicine,* 449 Pa. Super. 667, 674 A.2d 1130 (1996).

As stated, the dispute between herein defendants centers on determining who owns, controls and/or maintains the traffic island site of the accident. It is undisputed that the traffic island was built by defendant PennDOT in an area between a state-designated highway and a city-owned public highway as part of a street improvement project of the TOPICS program, which was funded by the United States Department of Transportation, Federal Highway Administration. Under the terms of the TOP-

ICS program, States administered federal funds for various highway projects within their states. Here, defendants PennDOT and City also contributed public funds and entered into a written agreement to allocate costs of the project between them on a percentage basis. These entities were to also enter into an agreement as to whom would be responsible for maintaining the various street improvements and traffic control devices. It is unclear whether the parties *ever* entered into such a contract, since none was found.

Based on these facts, defendant SEPTA argued that it has no liability in this matter because it did not build, nor does it own or have any legal duty to maintain the traffic island. It insists that the parties who control this piece of real estate, because they built the traffic island as a joint venture, are defendants PennDOT and City. Defendant SEPTA contends that defendants PennDOT and City are in joint possession of the traffic island since they built it together and, by agreement, were to have assigned the maintenance responsibility between or amongst themselves. Since no one could show that defendant SEPTA had any maintenance responsibility of this traffic island or ownership of the traffic island, this argument was accepted as uncontroverted. While the fact does not escape this trial judge that the traffic island had been saw cut to make the street wider for the benefit of SEPTA traffic, without evidence of "who done it," this trial judge cannot assess a legal duty of care unto defendant SEPTA of the traffic island built by someone else on land not owned by defendant SEPTA.

Defendant SEPTA further argued that as a Commonwealth entity, a suit against it [defendant SEPTA] is barred

by the doctrine of sovereign immunity unless it falls under one of the enumerated exceptions.[3] Under the circumstances of this case, the likely germane exception would be the real property exception.[4] However, this trial judge opines that this real property exception is inapplicable to defendant SEPTA since it does not own the real estate. Furthermore, as a transit agency, defendant SEPTA does not have control over any public highways nor, in particular, the public streets that surround the herein traffic island, which undisputedly are under the jurisdiction of either defendants PennDOT or City, depending on which side of the traffic island one is facing. Under the immunity analysis, this trial judge opines that defendant SEPTA has no ownership and/or control responsibility regarding the traffic island. Further, there was no evidence presented to find that defendant SEPTA had any maintenance responsibility of the traffic island.

This trial judge agreed with defendant SEPTA's two distinct arguments and found that defendant SEPTA was not liable for plaintiff's injuries. Consequently, in this trial judge's opinion no error was committed in finding in favor of defendant SEPTA and exonerating it from liability toward Plaintiff.

As to defendant City, it essentially argued citing both *Slough,* 686 A.2d 62, *aff'd,* 553 Pa. 673, 720 A.2d 485, and *Hubbard,* 660 A.2d 201, that the traffic island is simply not a traffic control device, but rather, is part of the state-designated highway. Here, for defendant City to be

3. See 42 Pa.C.S. §8542 (b).
4. *Id.* at §8542(b)(3).

liable for plaintiff's injuries under the applicable exception to the governmental immunity provisions, the injury must result from a "dangerous condition of trees, traffic signs, lights or other *traffic controls*" under its care, control or custody. 42 Pa.C.S. §8542(b)(4). (emphasis added) This immunity exception must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability. *Lory v. City of Philadelphia,* 544 Pa. 38, 674 A.2d 673 (1996), *cert. denied,* 117 S.Ct. 184 (U.S. Pa. 1996). Thus, it is important to define these terms.

By definition, a *traffic control island* is an area within a roadway from which vehicular traffic is intended to be excluded for the purpose of controlling and directing specific movements of traffic to definite channels.[5]

A *traffic control device* is a manually, electrically or mechanically operated signal by which traffic is alternately directed to stop and permitted to proceed.[6]

In contrast to defendant City's argument, defendant PennDOT premised its argument on the assumption that the traffic island in question is a *traffic control device,* and not part of the state-designated highway. Citing 36 Pa.C.S. §1758-204 of the 1961 Highway Act, defendant PennDOT asserted that the definition of its maintenance responsibility makes no mention of the maintenance of traffic control devices, and that it is not responsible for traffic devices on top of the surface, no matter how affixed. Defendant PennDOT did concede that pursuant to

---

5. 69 Pa.Code §211.4(b).
6. 67 Pa.Code §201.1

the provision of section 8542(b)(6)(ii) of the Pennsylvania Code, it [defendant PennDOT] may be held liable for injuries arising out of a dangerous condition of *streets or highways* under its jurisdiction. Defendant PennDOT would be responsible for maintaining the traffic island only if it were part of the base or surface course of the roadway.[7] However, defendant PennDOT asserted that if the purpose of the traffic island is to regulate or control traffic, then it is within defendant City's responsibility.

This trial judge opines that the holdings of *Slough* and *Hubbard,* in conjunction with the definitions *of traffic control device* and *traffic island,* are controlling. In *Slough,* the appellate court carefully dissected the definitions of a *traffic control device,* contrasting it with a median[8] and a traffic island. The court concluded that a "median" or "traffic island" is a "traffic control" in only the broadest sense of the term, acting merely as a means of separating or keeping one lane of travel from running into another. The court further held that a median *was part of the highway,* such that PennDOT *was* responsible for the median. The court further held that strictly construing the phrase "traffic control," as used in the section 8542(b)(4) exception to governmental immunity, defendant City cannot be held liable for the dangerous condition of the median in said case. *Slough,* 686 A.2d at 65.

---

7. 36 Pa.C.S. §1758-203(2).

8. The portion of a divided highway separating the traveled ways for traffic in opposite directions. 67 Pa.Code §201.2.

In *Hubbard,* the court held that a *median* was part of the highway instead of a sidewalk and that PennDOT was responsible for any injuries resulting from the defective maintenance of the median. *Hubbard,* 660 A.2d at 204.

While sympathetic to defendant PennDOT's frustration in trying to convince this trial judge that its argument was the correct one to follow, this trial judge opines that the above-cited case law are unambiguous in defining *median* and/or *traffic island* and the maintenance responsibility which attaches. Thus, this trial judge opines that the decision reached in this matter is the correct one and, therefore, a new trial is not warranted.

This trial judge does acknowledge defendant Penn-DOT's argument that *Slough* does not apply in this case because *Slough* dealt with a median between two state-designated highways, and here, the case involves a traffic island between a state-designated highway and a city-owned public highway. While defendant PennDOT is correct in this factual observation, this trial court opines that the conclusion reached is unaffected by this difference. Absent an agreement as to what entity maintains the traffic island, the purpose of the traffic island is the same whether it is between two state-designated highways or as here, a state-designated highway and a city-owned street. No error has been made by this trial judge's reliance on the case law cited.

## CONCLUSION

Based on the above discussion and relevant case law, this trial judge is of the opinion that no error was com-

mitted when deciding this case and denying defendant PennDOT's motion for post-trial relief. This trial judge respectfully requests that defendant PennDOT's appeal be dismissed, that the order dated February 25, 2003, be affirmed, and this trial judge's findings be upheld.