J.S04035/14

2014 PA Super 196

PRIETO CORPORATION,            :      IN THE SUPERIOR COURT OF
                                 :          PENNSYLVANIA
                Appellee       :
                                 :
                   v.          :
                                 :
                               :
GAMBONE CONSTRUCTION CO.,    :
                               :
                Appellant   :     No.  1538 EDA 2013

Appeal from the Judgment Dated May 8, 2013
In the Court of Common Pleas of Montgomery County
Civil Division No(s).: 2009-22021

BEFORE: BENDER, P.J., SHOGAN, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:         **FILED SEPTEMBER 10, 2014**

      Appellant, Gambone Construction Co., appeals from the judgment entered in the Montgomery County Court of Common Pleas in favor of Appellee, Prieto Corporation. Appellant claims the trial court improperly construed the Contractor and Subcontractor Payment Act[1] ("CASPA") and challenges the sufficiency of evidence for an oral contract between the parties. We hold that a "curb" is both a structure and an alteration of real property, each of which falls within the scope of CASPA, and the evidence was sufficient to establish an oral contract between the parties. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 73 P.S. §§ 501-516.

We state the facts as set forth by the trial court:

> [Appellee] is in the business of constructing concrete curbs and Belgian block curbs. [Appellant] is a general contractor in the business of developing residential and commercial properties. [Appellee] worked as a subcontractor for [Appellant] from 1999 through 2007 on 198 jobs and was paid $1,917,260.79 by [Appellant].
>
> The custom and practice of contract formation and performance between [Appellant] and [Appellee] from 1999 to 2007 is as follows. [Appellant] would customarily initiate contact with [Appellee] and request a bid for [Appellee] to construct curbs for its construction projects. [Appellee] would customarily then fax a proposal to [Appellant's] office. In response, [Appellant's] office would send a purchase order to [Appellee], and [Appellee] would perform the work as set forth in [Appellant's] purchase order. [Appellee] began the work after authorization by [Appellant]. [Appellee] would then send an invoice to [Appellant] after the work was completed. [Appellant] would pay the invoice usually [within sixty to ninety days].
>
> [Appellee] initiated suit against [Appellant] due to non-payment of four outstanding invoices relating to . . . four projects.

Trial Ct. Op., 7/29/13, at 1 (citations and some capitalization omitted).[2]

---

[2] The certified record did not include the trial transcript. We have held that failure to include the trial transcript in the certified record typically precludes appellate review. *Floyd v. Phila. Elec. Co.*, 429 Pa. Super. 460, 463, 632 A.2d 1314, 1315 (1993). More recently, however, our Supreme Court held "that where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." Pa.R.A.P. 1921 note (citing *Commonwealth v. Brown*, 617 Pa. 107, 117 n.4, 52 A.3d 1139, 1145 n.4 (2012)). In this case, because a copy of the trial transcript is part of the reproduced record and neither party has disputed its accuracy, we will resolve Appellant's claims on their merits. *See id.*

The trial court's opinion also included numerous findings of fact with respect to the four projects. *See id.* at 2-5. For each project, Appellee faxed a job proposal to Appellant and Appellant responded with a written purchase order. *See id.* Appellee subsequently performed the work described in the purchase order and sent Appellant a written invoice. *See id.* Appellant did not pay Appellee in full for the work performed. *See id.*

Appellee, as noted above, constructed curbs. The process involved setting up a "string line," purchasing concrete, putting concrete into a "curb machine," and building curbs along roadways. R.R. at 270a-71a. Appellee did not "grade," dig, or excavate the development. *Id.* at 271a-72a. Sometimes, instead of pouring concrete, Appellee constructed curbs using "Belgian block" forms.[3]

Appellee sued Appellant, raising claims of breach of contract, unjust enrichment, and violation of CASPA.[4] A bench trial ensued, and the court rendered a verdict in favor of Appellee on February 19, 2013. Both parties filed post-trial motions, with Appellant moving for judgment notwithstanding the verdict only. The court denied the post-trial motions and entered

---

[3] The record did not define numerous terms, including "string line" and "curb machine."

[4] A private right of action exists under CASPA.

judgment on May 8, 2013.[5]  Appellant filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

> Did the trial court commit error by improperly extending the clear provisions of [CASPA] to include the work provided by [Appellee], which, according to the testimony of its principles [sic], did not constitute an "Improvement" as defined in 73 P.S. § 502 to include "(1) All or any part of a build or structure. (2) The erection, alteration, demolition, excavation, clearing, grading or filling o[f] real property.  (3) Landscaping, including the planting of trees and shrubbery, and construction driveways and private roadways on real property."?
>
> Did the trial court commit error in finding that [CASPA] applied to [Appellee's] claims when the evidence presented was insufficient to establish a valid contract between the parties as required under 73 P.S.C.A. [sic] §502?
>
> Did the trial court commit error in finding that there was an oral contract between [Appellee] and [Appellant] because the testimony proffered by [Appellee] did not reference a single specific conversation with any person or representative at [Appellant], did not provide specific terms and conditions of contract or agreement and did not provide sufficient specificity so as to form an enforceable oral contract[,] which is subject to a heightened standard?

Appellant's Brief at 7-8.

For its first issue, Appellant argues the trial court misconstrued CASPA to encompass the work at issue.  Specifically, Appellant maintains the statutory phrase "constructing driveways and private roadways on real

---

[5] The order was signed and served on the parties on April 30, 2013, but was not docketed until May 8, 2013.

property" excludes the construction of curbs and therefore CASPA does not apply. *Id.* at 7 (quoting 73 P.S. § 502). We hold Appellant is due no relief.

"In reviewing a non-jury verdict, the appellate court must determine whether the findings of the trial court are supported by the evidence or whether the trial court committed error in any application of the law." ***Refuse Mgmt. Sys., Inc. v. Consol. Recycling & Transfer Sys., Inc.***, 448 Pa. Super. 402, 412, 671 A.2d 1140, 1145 (1996) (internal quotation marks and citation omitted). "An appellate court will reverse a trial court's grant or denial of [judgment notwithstanding the verdict] only when the appellate court finds an abuse of discretion or an error of law." ***Braun v. Wal-Mart Stores, Inc.***, 24 A.3d 875, 890 (Pa. Super. 2011) (*per curiam*) (citation omitted), *appeal granted in part*, 616 Pa. 354, 47 A.3d 1174 (2012). We can also affirm on any basis. ***Donnelly v. Bauer***, 553 Pa. 596, 611, 720 A.2d 447, 454 (1998).

Our standard of review for statutory interpretation is *de novo*. ***Braun***, 24 A.3d at 953.

> The object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent. A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. In ascertaining legislative intent, this Court is guided by, among other things, the primary purpose of the statute, and the consequences of a particular interpretation.

> Moreover, it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute.

*Id.* (alteration, citations, punctuation, and formatting omitted). "Absent a definition, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail." *Nippes v. Lucas*, 815 A.2d 648, 650 (Pa. Super. 2003) (citations omitted).

By way of background,

> CASPA [is] a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. The underlying purpose of CASPA is to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract. The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalty, attorney fees and litigation expenses may be imposed on an owner, contractor or subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.

*Zimmerman v. Harrisburg Fudd I, L.P.*, 984 A.2d 497, 500-01 (Pa. Super. 2009) (alterations, citation, and punctuation omitted).

CASPA applies to a "construction contract," which is defined as an "agreement, whether written or oral, to perform work on any real property located within this Commonwealth." 73 P.S. §§ 502, 515. The following statutory definitions also apply:

**"Real property."** Real estate that is improved, including lands, leaseholds, tenements and hereditaments, and improvements placed thereon.

**"Improve."** To design, effect, alter, provide professional or skilled services, repair or demolish any improvement upon, connected with, or on or beneath the surface of any real property, to excavate, clear, grade, fill or landscape any real property, to construct driveways and private roadways, to furnish materials, including trees and shrubbery for any of these purposes, or to perform any labor upon improvements.

**"Improvement."**

(1) All or any part of a building or structure.

(2) The erection, alteration, demolition, excavation, clearing, grading or filling of real property.

(3) Landscaping, including the planting of trees and shrubbery, and constructing driveways and private roadways on real property.

73 P.S. § 502 (reordered to facilitate disposition). Black's Law Dictionary defines a structure as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." Black's Law Dictionary 1559 (9th ed. 2009).

In **Hubbard v. Com., Dept. of Transp.**, 660 A.2d 201 (Pa. Commw. 1995),[6] the Commonwealth Court defined "curb" in determining whether the

---

[6] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." **NASDAQ OMX PHLX, Inc. v. PennMont Secs.**, 52 A.3d 296, 308 n.7 (Pa. Super. 2012) (citation omitted).

Commonwealth was responsible for injuries incurred when the victim fell on

a "defective median strip." *Id.* at 202.

> Because . . . a curb . . . was [not] defined by the General Assembly when it did so, we must resort to the rules of statutory construction to determine [its] meaning[ ].  In this regard, words and phrases are to be construed according to their common and approved usage. 1 Pa.C.S. § 1903(a).  Furthermore, if a word has acquired a peculiar and appropriate meaning, then it shall be interpreted in accordance with that meaning. *Id.*

> A curb, as that term is commonly used, is a raised edging serving as a border between that portion of the right-of-way for which a public body has assumed maintenance responsibilities and that portion still retained by the abutting property owner. Public bodies normally assume responsibility for property within the curb lines, *i.e.*, the gutters and the roadway or cartway.  On the other hand, the abutting property owner retains responsibility for the conditions outside the curb lines, *i.e.*, the sidewalk, the tree planting strip, and the curb itself.  Absent some deed or dedication requirement, by definition, for there to be a curb, there must be an abutting property owner with maintenance responsibilities.

> PennDOT also defines curbs in a similar manner in its regulations. 67 Pa. Code § 211.1 defines a curb as a "vertical or sloping member generally along and defining the edge of a roadway."  Moreover, the regulations also define a curb line as being the "boundary between a roadway and a sidewalk, usually marked by a curb." 67 Pa. Code § 211.1.

*Id.* at 204 (some citations and footnote omitted).

Instantly, we examine the plain language of CASPA.  *See Braun*, 24

A.3d at 953.  "Real property" is defined as including "improved lands."  73

P.S. § 502.  An "improvement" is defined as including a structure or an

alteration of real property.[7] *Id.* A "structure" includes any "piece of work artificially built up." Black's Law Dictionary 1559; *see Nippes*, 815 A.2d at 648. A "curb" is a raised edging serving as a roadway border that is the responsibility of the abutting property owner. *See Hubbard*, 660 A.2d at 204; *see also Nippes*, 815 A.2d at 648. We hold that a "curb" is both a structure—a raised edging—and an alteration of real property. *See* 73 P.S. § 502; *Hubbard*, 660 A.2d at 204. Thus, a "curb" is an "improvement" within the scope of Section 502. *See* 73 P.S. § 502. It follows that to design, effect, and provide skilled services regarding a "curb" is to "improve" real estate. *See id.* We hold that the trial court did not err by applying CASPA to an oral contract to perform work—*e.g.*, constructing a "curb"—on real property. *See id.*

Finally, we summarize Appellant's arguments for its last two issues. Appellant insists that the trial court erred by finding Appellee established the existence of the oral contract. Appellant maintains that Appellee's witnesses and documents did not sufficiently establish the contract terms. Appellant suggests that the purchase orders it sent to Appellee and Appellee's invoices for work done pursuant to the purchase orders did not establish valid and enforceable contracts. Appellant, we conclude, has not established entitlement to relief.

---

[7] We acknowledge the circular nature of the definitions.

A [judgment notwithstanding the verdict] can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for [judgment notwithstanding the verdict], we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for [judgment notwithstanding the verdict]. A [judgment notwithstanding the verdict] should be entered only in a clear case.

***Joseph v. Scranton Times, L.P.***, 89 A.3d 251, 260 (Pa. Super. 2014)

(citation omitted) (setting forth standard of review for bench trial).

[T]he question of whether an undisputed set of facts establishes a contract is a matter of law. It is also well settled that in order for an enforceable agreement to exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance. It is equally well established that an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent. We must, therefore, look to the parties' course of conduct to ascertain the presence of a contract.

*Refuse Mgmt.*, 448 Pa. Super. at 415-16, 671 A.2d at 1146 (citations and internal quotation marks omitted); *Boyle v. Steiman*, 429 Pa. Super. 1, 16-17, 631 A.2d 1025, 1033 (1993).

In *Boyle*, this Court ascertained whether the evidence substantiated the existence of an oral contract. *Boyle*, 429 Pa. Super. at 16-17, 631 A.2d at 1033. In *Boyle*, the plaintiff—a private investigator—sued the defendant—a personal injury attorney—for breach of oral contract. *Id.* at 6, 631 A.2d at 1028. The plaintiff alleged that the defendant failed to pay fees for investigating "various personal injury cases." *Id.* The defendant, *inter alia*, challenged the sufficiency of evidence for an oral contract. *Id.* at 16-17, 631 A.2d at 1033.

The *Boyle* Court disagreed:

> Instantly, the evidence presented by the [plaintiff[8]] was more than sufficient to meet their burden of proving the existence of an oral contract between the [plaintiff] and the [defendant]. The administrators' testimony reveals that the [defendant] would contact the [plaintiff] or the administrators with personal injury cases and these cases would be investigated and results of the investigations would be submitted to the [defendant] together with a bill. The [defendant] then paid every bill submitted to him. This course of dealing continued until 1983 when the [defendant] began to fail to pay some of the bills submitted to him by the [plaintiff]. Thus, the evidence presented by the administrators was sufficient to meet

---

[8] Because the plaintiff had passed away prior to trial, the administrators of the plaintiff's estate—who were the plaintiff's sons and worked with the plaintiff—were substituted for the plaintiff. *Boyle*, 429 Pa. Super. at 7, 631 A.2d at 1028.

> their burden of establishing the existence of an oral contract for investigative services between the parties. Additionally, the evidence established a course of dealings between the parties that proved that the [plaintiff] expected to be paid for his investigative services and was not accepting the investigation assignments on a contingency basis as alleged by the [defendant]. Finally, the [defendant's] own testimony establishes the existence of an oral contract between the parties for investigative services and that these services were provided by the [plaintiff] on all of the disputed bills.

*Id.* at 17, 631 A.2d at 1033-34.

Instantly, after viewing the evidence in the light most favorable to Appellee as the verdict winner, *see Joseph*, 89 A.3d at 260, we hold the record established the existence of the four oral contracts at issue. *See also Donnelly*, 553 Pa. at 611, 720 A.2d at 454 (holding appellate court can affirm on any basis). Appellant, similar to the defendant in *Boyle*, would contact Appellee with a purchase order specifying a project, albeit in response to Appellee's proposal. *See* Trial Ct. Op. at 2-5; *cf. Refuse Mgmt.*, 448 Pa. Super. at 416, 671 A.2d at 1146 (stating "offer may be accepted by conduct"); *Boyle*, 429 Pa. Super. at 17, 631 A.2d at 1033-34. Appellee, similar to the plaintiff in *Boyle*, would subsequently perform the requested service and invoice Appellant. *See* Trial Ct. Op. at 2-5; *cf. Boyle*, 429 Pa. Super. at 17, 631 A.2d at 1033-34; *cf. also Refuse Mgmt.*, 448 Pa. Super. at 416, 671 A.2d at 1146. Appellant, in fact, unlike the defendant in *Boyle*, partially paid some of Appellee's invoices. *See* Trial Ct. Op. at 2-5. Further, the instant parties, identical to the *Boyle* parties, had a

substantially similar, extensive course of dealing for almost a decade before nonpayment began. **See** Trial Ct. Op. at 1; **cf. Boyle**, 429 Pa. Super. at 17, 631 A.2d at 1034.

Similar to the **Boyle** Court, which affirmed the existence of an oral contract based on an analogous evidentiary record, we cannot conclude that the evidence was such that a verdict for Appellant was clear. **See Joseph**, 89 A.3d at 260. Appellant's claim that Appellees' witness testimony and documentation were deficient is belied by Appellant's partial payment of some of the instant invoices, thus evidencing acceptance. **See** Trial Ct. Op. at 2-5 (citing documents substantiating partial payment by Appellant); **see also Refuse Mgmt.**, 448 Pa. Super. at 416, 671 A.2d at 1146 (holding parties' course of conduct relevant to ascertaining presence of oral contract). Accordingly, having discerned no abuse of discretion or error of law, we affirm the judgment below, albeit partially on other grounds. **See Braun**, 24 A.3d at 890; **Refuse Mgmt.**, 448 Pa. Super. at 412-13, 671 A.2d at 1145; **see also Donnelly**, 553 Pa. at 611, 720 A.2d at 454.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2014