**Tina L. GLENN, in her own right and as Administratrix of the Estate of William T. Glenn, Deceased, Appellant,**

v.

**Timothy F. HORAN and Southeastern Pennsylvania Transportation Authority and Interstate Outdoor Advertising, Inc. and Township of Upper Merion.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2000.

Decided Jan. 3, 2001.

Alan M. Feldman, Philadelphia, for appellant.

Samuel S. Woodhouse, Philadelphia, for appellees.

Before DOYLE, President Judge, LEADBETTER, Judge and LEDERER, Senior Judge.

DOYLE, President Judge.

Tina L. Glenn, administratrix of the estate of William T. Glenn (Decedent), appeals from an order of the Court of Common Pleas of Montgomery County, which sustained the preliminary objections of Upper Merion Township (Township) and dismissed Glenn's complaint in trespass.

On March 1, 1996, at approximately 6:00 p.m., Decedent was a pedestrian crossing First Avenue, a street owned and maintained by the Township, near its intersection with North Gulph Road, in order to reach a Southeastern Pennsylvania Transportation Authority (SEPTA) bus stop. While crossing First Avenue, Decedent

was struck and killed by an automobile driven by Timothy F. Horan.

A pedestrian crosswalk was located on First Avenue near the scene of the accident, which was composed of faded white lines painted on the surface of the roadway. No stop signs, traffic lights or other traffic controls were present in the area to facilitate the passage of pedestrians across First Avenue. Also, neither the bus stop nor First Avenue was illuminated by streetlights.

Glenn, in her own right as spouse of Decedent and as the administratrix of the Decedent's estate, filed a wrongful death and survival action against the Township.[1] In her complaint, Glenn alleges that the Township was negligent in these respects:

    (a) maintaining a hazardous condition of streets in the area of the bus stop on First Avenue;

    (b) failing to provide a reasonably safe place for pedestrians to cross First Avenue;

    (c) failing to provide proper, necessary and adequate traffic controls to allow pedestrians to safely cross First Avenue;

    (d) failing to comply with accepted codes, standards and regulations with regard to the safe design of pedestrian crosswalks;

    (e) maintaining a dangerous and defective condition threatening pedestrians attempting to cross First Avenue;

    (f) failing to adequately eliminate [sic] the pedestrian crosswalk, the bus stop or First Avenue.

(Complaint at ¶ 19(a)–(f); Reproduced Record (R.R.) at 8a–9a.)

The Township responded by filing preliminary objections to Glenn's complaint. Specifically, the Township asserts (1) that Glenn's complaint is legally insufficient be-

cause she failed to allege any facts in her complaint to establish a prima facie case, and (2) that the Township is immune from suit under Sections 8541 and 8542 of the Judicial Code (pertaining to governmental immunity), 42 Pa.C.S. §§ 8541, 8542.

On October 31, 1997, the Common Pleas Court entered an order sustaining the Township's preliminary objections and dismissing Glenn's complaint. The Court observed that there were no traffic lights, stops signs, other traffic controls, or lighting where Decedent was killed, and that the Township had no legal duty to erect traffic controls. The Court further stated that, even if the crosswalk could be characterized as a "traffic control" and that its paint was faded, the Court could not "conceive [of] how the condition of the paint on the street could in any way be the cause of this accident." (Common Pleas Court opinion at 6.)

Glenn filed a motion for reconsideration or, in the alternative, permission to file an amended complaint; however, the Common Pleas Court rejected the motion, writing the word "refused" on Glenn's proposed order.

Because there were multiple defendants in this case, the October 31, 1997 order was interlocutory at the time it was entered. The October 31st order became a final, appealable order on October 27, 1999, when Glenn entered its "Praecipe to Settle, Discontinue, and End" (*see* footnote 1 *supra* ), and this appeal followed.

On appeal, Glenn contends that, accepting the averments in her complaint as true, she set forth a claim that the Township negligently erected or maintained traffic controls, in the form of a faded crosswalk not augmented by warning signs and

1.  Glenn also filed suit against Timothy Horan, SEPTA, and the Department of Transportation, and SEPTA joined Outdoor Advertising, Inc., owner of a shelter at the SEPTA bus stop, as an additional defendant. Glenn, however, entered into settlements with Horan and Outdoor Advertising, and the Department of Transportation was dismissed from the matter by stipulation of the parties. Glenn filed a praecipe to settle, discontinue and end with regard to SEPTA on October 27, 1999. None of the aforementioned defendants are participating in this appeal.

street lighting, which failure caused or substantially contributed to the death of Decedent. Specifically, Glenn argues (1) that she established a claim under the "Trees, Traffic and Street Lighting" exception to governmental immunity, Section 8542(b)(4) of the Judicial Code, 42 Pa.C.S. § 8542(b)(4), (2) that the Common Pleas Court erred in finding that her complaint was not sufficient to show that the Township owed a duty to decedent or that the crosswalk caused the accident, and (3) that, even if we find that her complaint was deficient, the Court erred in not giving her leave to amend the pleading.

The Township is a local agency, and, as such, is shielded by the governmental immunity provisions of the Judicial Code. 42 Pa.C.S. § 8541 and § 8542. In order to maintain an action against the Township for negligence, Glenn must first demonstrate that a party who is not protected by statutory immunity could be held liable under common law or statute for the same conduct, and that the injury was caused by the negligent acts of the local agency or its employees. 42 Pa.C.S. § 8542(a). Second, Glenn must show that the case falls within one of the eight exceptions to governmental immunity set forth in 42 Pa.C.S. § 8542(b).

The exception at issue here, the "Trees, Traffic and Street Lighting" exception to governmental immunity, provides as follows:

> **(b) Act which may impose liability.—** The following acts by a local agency or its employees may result in the imposition of liability on a local agency:
>
> . . . .
>
> (4) *Trees, traffic controls and street lighting.*—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the

local agency had actual notice or could reasonably be charged with such notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

■ Glenn contends that her claim is within the traffic control exception, because a crosswalk qualifies as a traffic control device. We agree.

The Judicial Code does not define the term "traffic control" for purposes of the exceptions to governmental immunity; however, we may look to the relevant definitions contained in Section 102 of the Vehicle Code, 75 Pa.C.S. § 102. *Slough v. City of Philadelphia,* 686 A.2d 62 (Pa. Cmwlth.1996), *aff'd,* 553 Pa. 673, 720 A.2d 485 (1998). Section 102 of the Vehicle Code defines "official traffic control devices" as "[s]igns, signals, *markings* and devices ... erected by the authority of a public body or official having jurisdiction, for the purpose of regulating, *warning,* or *guiding* traffic." (Emphasis added.) The term "traffic" is broadly defined in Section 102 to include pedestrians as well as vehicles. Further, the Department of Transportation's regulations concerning crosswalks provide:

> (a) *Function.* Crosswalk markings at signalized intersections and across intersectional approaches on which traffic stops, serve primarily to guide pedestrians in the proper paths. *Crosswalk markings across roadways on which traffic is not controlled by traffic signals or STOP signs, shall also serve to warn the motorist of a pedestrian crossing point.* At nonintersectional locations, these markings legally establish the crosswalk and should be accompanied by a Pedestrian Crossing Sign.

67 Pa.Code § 211.1174 (emphasis added). This regulation is part of "Subchapter K. Markings" of the Department's regulations governing "Traffic Control Devices." 67 Pa.Code §§ 211.1–211.1214.

Considering the above, a crosswalk is properly characterized as a marking which serves the dual purpose of guiding pedestrians and of warning motorists of the presence of a pedestrian crossing point. Markings designed to warn motorists and guide pedestrians plainly fall into the definition of "official traffic control device" in Section 102 of the Vehicle Code, and the Department of Transportation's regulations treat crosswalk markings as traffic control devices. Additionally, based on Glenn's averment that no traffic lights, stop signs, or other traffic controls existed in the area of the accident, in accordance with 67 Pa.Code § 211.1174(a), the crosswalk at issue here functioned as a warning to motorists of a pedestrian crossing point. Therefore, we hold that the crosswalk qualified as a traffic control device for purposes of Section 8542(b)(4) of the Judicial Code. *Cf. Pettineo v. Philadelphia Law Department—Claims Division*, 721 A.2d 65 (Pa.Cmwlth.1998) (nylon rope designed to control pedestrians qualified as a traffic control for governmental immunity purposes).

■ Next, Glenn contends that, accepting the averments in her complaint as true, she set forth a claim that the Township negligently failed to erect and maintain a traffic control device and thereby contributed to the death of Decedent. In ruling on a demurrer, a court must accept as true all well-pleaded material allegations, as well as all inferences reasonably deduced therefrom. *Envirotest Partners v. Department of Transportation*, 664 A.2d 208 (Pa.Cmwlth.1995). Moreover, in order to sustain a demurrer, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain the demurrer. *Id.* While the averments in Glenn's complaint are sparse and not well developed, they are nonetheless adequate to preclude us from concluding without doubt or reservation that the law will not permit recovery in this matter.

Glenn averred in her complaint that the crosswalk on First Avenue consisted of "several faded, painted white lines on the street surface" (Complaint at ¶ 10; R.R. at 7a), and she alleged that no additional traffic controls or lighting had been installed to facilitate the safe passage of pedestrians across First Avenue. (Complaint at ¶ 11; R.R. at 7a.) The complaint also alleged that the Township owned and maintained First Avenue and that it had "actual and constructive notice of the dangerous conditions...." (Complaint at ¶ 14; R.R. at 7a.) These allegations are sufficient, in our view, to state a claim that the Township was negligent for the reasons that the crosswalk on its street had deteriorated, the crosswalk was not safe for pedestrians due to the absence of additional traffic controls and lighting, and that the Township was aware of the dangerous conditions.

■ Although the Township argues that it had no duty to install any traffic control devices or street lighting, Glenn is seeking to establish that the Township negligently maintained and erected a traffic control (painting a crosswalk, which was not augmented by warning signs or illuminated, and which had faded), and not that it failed to implement a traffic control in the first instance. When a municipality installs a traffic control device, the municipality may be held liable for negligently maintaining the traffic control. *Kennedy v. City of Philadelphia*, 160 Pa.Cmwlth. 558, 635 A.2d 1105 (1993), *aff'd by an equally divided court*, 540 Pa. 527, 658 A.2d 788 (1995); *City of Philadelphia v. Messantonio*, 111 Pa.Cmwlth. 364, 533 A.2d 1127 (1987), *petition for allowance of appeal denied*, 519 Pa. 668, 548 A.2d 257 (1988). And, our Supreme Court has recently held that, under certain circumstances, a municipality *does* have a duty to exercise its discretion and install traffic control devices. *Starr v. Veneziano*, 560 Pa. 650, 747 A.2d 867 (2000).[2]

2. In *Starr*, our Supreme Court stated that, in order for a plaintiff to establish that a munici-

The Township additionally argues that the complaint does not allege sufficient facts to establish a prima facie claim of causation, because the complaint does not place Decedent in the crosswalk when he was struck and killed. It is true that Glenn's complaint does not aver that Decedent was inside the crosswalk when he was struck and killed by Horan, and it is not clear where exactly Decedent was walking when he was killed. Glenn, however, does aver that the Township caused Decedent's fatal injuries (Complaint at ¶ 19; R.R. at 8a) and it can be reasonably inferred from the complaint that Decedent was struck by Horan's vehicle in the vicinity of the crosswalk. Therefore, we believe that the complaint is sufficient on this issue to establish a prima facie case to at least hurdle the challenge of the Township's demurrer to Glenn's pleading.

Therefore, in light of the above, the Common Pleas Court's order is reversed and this matter is remanded for further proceedings.

## *O R D E R*

**NOW,** January 3, 2001, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby reversed and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

The decision in this case was reached before the expiration of the appointment of Senior Judge LEDERER to the Commonwealth Court by the Supreme Court of Pennsylvania.

---

pality had a duty to erect traffic controls, the plaintiff must prove that the municipality (1) had actual or constructive notice of the dangerous condition of the street, (2) the device would have qualified as an appropriate remedial measure, and (3) that the municipality can fairly be charged with the failure to install the device.