**Jean RYALS and Jesse Ryals**

v.

**CITY OF PHILADELPHIA and Commonwealth of Pennsylvania, Department of Transportation, and SEPTA**

**Appeal of City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided May 7, 2004.

Alan C. Ostrow, Philadelphia, for appellant.

George F. Bihn, III, Philadelphia, for appellees.

BEFORE: COHN, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge COHN.

The issue before us is which governmental body, the City of Philadelphia (City) or the Pennsylvania Department of Transportation (DOT), bears responsibility for maintaining a crosswalk, formed by interlocking precast concrete pavers ("z-bricks") and concrete headers, that crosses a City street that has been adopted as a State highway. The resolution of that question is, in turn, governed by whether the concrete headers and z-bricks that form the crosswalk are legally determined to be simply part of the surface of the "highway" or considered to be part of a "traffic control device."

The instant case arises from a trip and fall pedestrian accident that occurred on a crosswalk in Philadelphia at the intersection of Market Street with Seventh Street.[1] The crosswalk itself is a 16 foot-wide strip between the north and south curbs of Market Street, consisting of red z-bricks that are bordered on the east and west by white concrete headers. The accident occurred. when Jean Ryals, while crossing the walk, tripped over an upraised part of the header.

Jean Ryals brought a civil action sounding in tort against DOT, the City and several other defendants[2] alleging that defects and irregularities in the crosswalk caused her injury. Her husband, Jesse Ryals, brought a derivative loss of consortium claim.

Prior to the hearing, the trial court dismissed several parties from the case and the remaining parties reached a two-part settlement. Part One provided for a payment of $120,000 to the Ryalses, to which

---

1. The City and DOT reconstructed this intersection pursuant to a construction reimbursement agreement under which DOT appointed the City as its agent for the purpose of hiring contractors to perform the necessary work. Upon completion of the construction, DOT was responsible for maintenance of the highway, and the City agreed to maintain traffic controls and parking regulations for all of the intersections that were listed in an exhibit to the agreement. The intersection in question was listed in the agreement.

2. The additional defendants consisted of contractors and their subcontractors whom the City had commissioned to design and install the crosswalk. Their involvement in the proceedings is not an issue in this appeal.

all the remaining defendants contributed, with DOT contributing $20,000. Part Two provided that the Ryalses would receive an additional $55,000 payment, from whichever government entity, the City or DOT, was legally determined to be liable for the crosswalk. Additionally, if the City was found liable, it would reimburse DOT for DOT's contribution to Part One of the settlement.

The case proceeded to bench trial as to the issue of which government entity bore responsibility for maintaining the crosswalk. The trial court entered a verdict against the City of Philadelphia, concluding that the crosswalk functioned as a traffic control device, thereby making it the City's responsibility to maintain. The City filed a motion for post-trial relief, which the trial court denied. This appeal followed. We must decide whether the trial court correctly determined that the City bears responsibility for maintenance of the crosswalk rather than DOT.[3]

The City argues that the concrete headers and z-bricks formed a portion of the surface of the highway which became DOT's responsibility to maintain when the highway was adopted as a State highway under the Act of August 27, 1963, P.L. 1335. The City relies on Section 542 of the State Highway Law (Law)[4], which provides that "[a]fter the streets, designated as State highways shall have been taken over by the Commonwealth, they shall be maintained, constructed, reconstructed, resurfaced and repaired by the [DOT] at the expense of the Commonwealth...." 36 P.S. § 670–542.[5] In response, DOT argues that the concrete header and z-bricks are a crosswalk and, therefore, constituted a traffic control, which remains the City's responsibility to maintain under Section 541 of the Law, and which imposes on the City the "duty to regulate traffic." 36 P.S. § 670–541.[6] The Law does not specifically define the phrase "regulate traffic," nor does it specify whether crosswalk mark-

3. On appeal from an order denying a motion for judgment notwithstanding the verdict, our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Williams v. Southeastern Pennsylvania Transportation Authority*, 741 A.2d 848 (Pa.Cmwlth.1999).

4. Act of June 1, 1945 P.L. 1242, *as amended.*

5. Section 542 provides:

Construction, resurfacing, repair and maintenance; change of lines, widths and grades After the streets, designated as State highways shall have been taken over by the Commonwealth, they shall be maintained, constructed, reconstructed, resurfaced and repaired by the department at the expense of the Commonwealth.... Provided, however, That nothing in this section shall be construed to place upon the Commonwealth any obligation to repair and maintain the curbing and footways of any such street, or to remove snow or keep streets clean:

\* \* \* \*

The department may enter into agreements, in the discretion of the secretary, with the cities or with persons, associations or corporations for the sharing with the Commonwealth of the cost of snow clearance, but not the carrying away thereof, construction, reconstruction or resurfacing of these streets, or sections thereof, taken over by the Commonwealth under any act.

6. Title 36 P.S. § 670–541 provides that:

The designation or taking over of any street of any city of the first or second class as a State highway by any act of Assembly is not intended and shall not be construed—
(1) To place upon the Commonwealth any duty *to regulate traffic* or police any such streets, but such duty shall be and remain the obligation of the cities;
(2) To place upon the department any authority *to regulate traffic,* parking or the general use by *the traveling public of the streets, or sections thereof,* taken over by the Commonwealth for maintenance or improvement under the provisions of any act of Assembly.
(emphasis added).

ings and materials that form the surface of the highway and, at the same time, regulate traffic fall within the responsibility of the municipality or the Commonwealth to maintain.

The City argues that the meaning of "highway" as used in Section 542 can be gleaned from the definitions of "highway" found in the Vehicle Code and DOT regulations. Both the Vehicle Code and DOT regulations define highway as being "the entire width between boundary right-of-way lines when any part thereof is available to vehicular traffic." 75 Pa.C.S. § 102;[7] 67 Pa.Code. § 211.1.[8] Consistent with this definition, the City notes that a crosswalk, which would fall within the boundary lines, is defined as "part of the roadway." 75 Pa.C.S. § 102;[9] *see also* 67 Pa.Code § 211.1.[10] The City also argues that this Court has found that objects placed on the surface of the highway to, in some manner, regulate traffic are a part of the highway, thereby relieving the City of responsibility. *See Slough v. City of Philadelphia,* 686 A.2d 62 (Pa.Cmwlth.1996),

*affirmed,* 553 Pa. 673, 720 A.2d 485 (1998). Relying extensively on *Slough,* the City, thus, argues that DOT retains responsibility "for the surface of a state highway even if that surface acts to control traffic." (City's Brief at 12).

In *Slough,* we concluded that DOT, and not the City of Philadelphia, was responsible for injuries arising from a concrete median upon a State highway. The *Slough* case involved a person who, while alighting from a bus, tripped on a defective concrete median on a City road that had come under DOT's authority under the State Highway Act of 1961, Act of September 18, 1961, P.L. 1389, *as amended,* 36 P.S. §§ 1758–101—1758–701.[11] The Court had to decide whether the City or DOT was responsible for maintaining the median. In concluding that DOT bore responsibility, we framed the issue as a dual inquiry that focused on both the structure and purpose of the median: "DOT would be responsible for maintaining the median on which Slough fell if it were part of the

**7.** The specific definition for "highway" reads:

> The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

75 Pa.C.S. § 102

**8.** The code regulation provides the same definition for highway as 75 Pa.C.S. § 102, except that it adds the sentence "The term 'highway' includes the term 'street.'" The term "street" is not defined in this definition section of the code.

**9.** Crosswalk is defined as:

> (1) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway, measured from the

curbs or, in the absence of curbs, from the edges of the traversable roadway; and, in the absence of a sidewalk on one side of the roadway, that part of a roadway included within the extension of the lateral lines of the existing sidewalk.
> (2) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.

75 Pa.C.S. § 102.

**10.** The regulatory definition is identical to 75 Pa.C.S. § 102, except that the introductory sentence reads, "A crosswalk *includes* the following:" suggesting that there may be more to the definition, whereas the statutory provision is limited to the terms within the definition.

**11.** Although *Slough* deals with different statutory sections than the instant case, substantively, the provisions are similar. Accordingly, our analysis in *Slough* is instructive in addressing the issues before us in this case.

'base or surface course' of the roadway," unless "the purpose of the median is to regulate or control traffic," in which case, it is the City's responsibility. *Slough*, 686 A.2d at 64. We noted that the median fell within the boundary lines of the "highway," which, under the definition of that term, rendered it a part of the highway, which is the first inquiry. However, we downplayed any traffic-control function performed by the median, which is the second inquiry, noting that it was "a 'traffic control' in only the broadest sense of the term, acting merely as a means of keeping one lane of travel from running into another." *Slough*, 686 A.2d at 65. Accordingly, since it was a part of the surface of the highway, but did not really function as a traffic control, we concluded that DOT bore responsibility for maintaining it.

In applying *Slough* to the instant case, we reject the City's argument that the function of the median in *Slough* was *irrelevant*. In *Slough*, the median did not function as a traffic control and so it did not become the City's responsibility, but the function was a relevant part of the analysis. It is clear that the crosswalk in this case forms a part of the surface of the roadway, which is the first inquiry under *Slough*; however, the second inquiry does require us to examine the function served by the crosswalk.

In examining the function served by the crosswalk, we begin with a previous decision of this Court which held that a crosswalk consisting of white painted lines on the surface of the road does constitute a traffic control. *Glenn v. Horan*, 765 A.2d 426 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 566 Pa. 670, 782 A.2d 549 (2001). In *Glenn*, a pedestrian was struck by an automobile and killed while using a crosswalk. The crosswalk was located on a township-owned road, so the decedent's estate brought suit against the township under the traffic controls exception to governmental immunity, arguing, *inter alia*, that the township was negligent in maintaining the crosswalk as a traffic control. The negligence claim was premised, in part, on the fact that the lines of the crosswalk, which were formed by the application of white paint to the surface of the road, had faded. The township filed preliminary objections, which the trial court granted on the basis of immunity. The decedent's estate appealed the order and we reversed, concluding that a crosswalk constituted a traffic control.

In reaching this conclusion, we conducted an extensive review of statutory and regulatory law. Noting that the Judicial Code does not define the term "traffic control," we turned to the Vehicle Code for guidance as to the meaning of the term. Within the Vehicle Code, "official traffic-control devices" are defined to include "markings . . . for the purpose of regulating, warning or guiding traffic." 75 Pa. C.S. § 102.[12] Further, the term "traffic" is defined to include both pedestrians and vehicles *Id.*[13] Consistent with both definitions, we discussed how DOT's regulations pertaining to crosswalks identified their traffic control function, noting specifically that "Crosswalk markings at signalized in-

---

12. This Section reads:
    "Official traffic-control devices." Signs, signals, *markings* and devices not inconsistent with this title placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic.
    75 Pa.C.S. 102 (emphasis added).

13. This Section reads:
    "Traffic." Pedestrians, ridden or herded animals, vehicles, streetcars and other conveyances, whether singly or together, using any highway for purposes of travel.
    75 Pa.C.S. 102.

tersections and across intersectional approaches on which traffic stops, serve primarily to guide pedestrians in the proper paths." *Glenn,* 765 A.2d at 429 (quoting 67 Pa.Code § 211.1174).[14] We noted that, in accordance with the regulations, the markings of the crosswalk "functioned as a warning to motorists of a pedestrian crossing point." *Glenn,* 765 A.2d at 430. Based upon this authority, we concluded that "a crosswalk is properly characterized as a marking which serves the dual purpose of guiding pedestrians and of warning motorists of the presence of a pedestrian crossing point." *Id.* Accordingly, we held that "the crosswalk qualified as a traffic control device for purposes of Section 8542(b)(4) of the Judicial Code." *Id.*

We find *Glenn* instructive here. As stated by the court in *Glenn,* a traffic control has as its central role the regulation of traffic, whether pedestrian, vehicular or both. In this case, the z-bricks and concrete headers clearly established the path for pedestrian egress across the high-

way, just as the painted crosswalk did in *Glenn,* thereby serving the express dual purposes, of "guiding pedestrians" and "warning motorists" of pedestrian traffic across the road. Although crosswalks may typically be defined through the use of paints or strips of plastic applied to the surface of the roadway, regulations defining "pavement markings" provide that such markings may be formed by "lines, patterns, words, *colors or other devices, set into the surface of,* applied upon or attached to the pavement ... or to objects within ... the roadway." 67 Pa.Code § 211.1 (emphasis added). The crosswalk in question falls within this language and clearly acts to regulate traffic. Because the crosswalk regulates traffic, it is distinguishable from the median in *Slough,* which we found served only a negligible traffic control function. Under our analysis in *Slough,* although the crosswalk does form the surface of the roadway, given its traffic control function, it is the City's responsibility to maintain.[15]

---

**14.** The regulation additionally provides that "Crosswalk markings across roadways on which traffic is not controlled by traffic signals or STOP signs shall also serve to warn the motorist of a pedestrian crossing point." 67 Pa.Code § 211.1174.

**15.** Although not on point with the instant case, we are guided by the Pennsylvania Supreme Court's recent decision in *Walker v. Eleby,* —— Pa. ——, 842 A.2d 389 (2004). In that case, the Supreme Court addressed whether the city or the Commonwealth bore responsibility for maintaining sidewalks that fell within a right-of-way given to the Commonwealth and abutted a city roadway that had been adopted as a state highway. The Supreme Court concluded that, although the General Assembly, through the highway Law, has delegated to DOT the responsibility to maintain these roadways, and although the Commonwealth retains a right-of-way, which includes the roadway and abutting sidewalk, it has not authorized transfer of ownership of these properties from the municipality to the

Commonwealth. As noted by that Court, "ownership remains with the municipality in which the designated roadway is located." *Id.* at ——, 842 A.2d at 402. The Supreme Court noted that:

> If the Commonwealth actually "owned" Chestnut Street, one would expect that the authority to regulate conduct on the street. and sidewalks would reside with the Commonwealth, not the City. The authority remaining with the City is an indicia of continuing ownership; while the Commonwealth's limited responsibility to maintain the cartway does not ineluctably suggest a sub silentio designation of responsibility for the abutting sidewalks.

*Id.* at ——, 842 A.2d at 401. Accordingly, the Supreme Court concluded that, although the sidewalk fell within the Commonwealth's right-of-way, given its function for pedestrian travel, it fell within the responsibility of the City to maintain.

In the instant case, DOT's responsibility for maintaining the highway is subject to the City's responsibility for maintaining the traffic

Our conclusion is buttressed by other facts in this case. For example, the Philadelphia Code provides for the City to maintain crosswalks. In fact, the Philadelphia Code uses similar language to 67 Pa.Code § 211.1 to provide that, "The [City Department of Streets] may designate and maintain, by appropriate devices, marking, or lines upon the surface of the roadway, crosswalks at intersections." Philadelphia Code § 12–1205. It further provides that the Department "shall place and maintain all necessary traffic-control signs, signals, devices and markings."

The City also understood that it was responsible for maintaining the crosswalk; the City's Project Engineer for the City's Market Street reconstruction project testified that the z-bricks and concrete headers were part of the design for the "traffic control system for 7th and Market Street" (Notes of Testimony (N.T.) at 72) and that they were designed "to identify the path for pedestrians." (N.T. at 66). In line with this understanding, the City had taken steps to correct the crosswalk defect, hiring local contractors to remove the z-bricks and the concrete headers.

Further, under the contract pertaining to the Market Street improvements, the City agreed to maintain signage and traffic controls at the intersection involved. Although the agreement did not specifically include the word "crosswalk," it clearly did provide for the City to maintain signalized intersections at several intersections, including the one involved in this case. DOT correctly notes that crosswalks are a component of signalized intersections. *See* 67 Pa.Code § 211.1174(a).[16]

For all of these reasons, we conclude that the City bore responsibility for maintaining the crosswalk. Accordingly, we affirm the decision of the common pleas court.

### ORDER

**NOW,** May 7, 2004, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

controls upon the highway. This delegation is consistent with the Supreme Court's analysis in *Walker* that ownership of the highway remains with the City, subject to the statutorily imposed responsibilities on DOT to maintain the highway. The Law does not impose on DOT a responsibility to maintain traffic controls such as the crosswalk at issue here, instead leaving such responsibility with the City. Accordingly, as indicated in *Slough,* examination of which governmental entity bears responsibility for an injury incurred within a right-of-way of a state-adopted highway is not solely dependent upon the right-of-ways given by one to the other, but is more a function of the purpose served by the particular portion at issue.

The portion at issue here, a crosswalk, although falling within right-of-way of the roadway maintained by DOT, was also a means for pedestrian travel, which, as determined by *Glenn,* renders that portion of the road a traffic control falling within the City's responsibility to maintain.

16. This regulation, which addresses "Crosswalks and crosswalk lines," provides that:

(a) Function. Crosswalk markings at signalized intersections and across intersectional approaches on which traffic stops, serve primarily to guide pedestrians in the proper paths. Crosswalk markings across roadways on which traffic is not controlled by traffic signals or STOP signs, shall also serve to warn the motorist of a pedestrian crossing point. At nonintersectional locations, these markings legally establish the crosswalk and should be accompanied by a Pedestrian Crossing Sign.