IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jewel Lee Camacho,           :
           Appellant   :
                        :
      v.              :  No. 390 C.D. 2017
                        :  ARGUED:  December 4, 2017
West Chester Area School   :
District                  :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE J. WESLEY OLER, JR., Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE OLER, JR.          FILED:  December 27, 2017


Jewel Lee Camacho appeals from the March 1, 2017 order of the Court of Common Pleas of Chester County (trial court) that granted West Chester Area School District's (School District) motion for summary judgment pursuant to what is commonly known as the Political Subdivision Tort Claims Act (Act), 42 Pa. C.S. §§ 8541 - 8542.[1]  We affirm.

On January 18, 2014, Camacho was leaving her granddaughter's cheerleading competition when she tripped and fell over a concrete parking barrier

---

[1] Section 8541 of the Act provides that "except as otherwise provided in this sub-chapter, no local agency shall be liable for any damages on account of injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S. § 8541.

or parking spot bumper that was located horizontally across a walkway on the campus of West Chester East High School (Campus) in West Chester, Pennsylvania. Camacho is alleged to have sustained significant and permanent injuries to her leg, including a fractured tibia.

The Campus parking barriers are not attached to the surface. They are freely movable and removable. The barriers were designed to be removable so as not to damage plows that are used to clear the drive areas. The students on Campus move the parking barriers as pranks. Two people can easily move one parking barrier. After the accident, in the spring of 2014, the School District removed the parking barriers from the Campus parking lot.

On June 10, 2015, Camacho filed a civil action in the trial court. On November 22, 2016, the School District filed a motion for summary judgment. On December 28, 2016, Camacho filed a response in opposition to the School District's motion. On January 18, 2017, the School District filed a sur reply to Camacho's response. On March 2, 2017, the trial court entered an order dated March 1, 2017 which granted the School District's motion for summary judgment. Camacho now appeals to this Court.[2]

---

[2] Our standard of review is *de novo* and our scope of review is plenary. *Leibensperger v. Carpenter Technologies, Inc.*, 152 A.3d 1066, 1072 n. 6 (Pa. Cmwlth. 2016). Summary judgment is proper when the record demonstrates that no genuine issue of material fact exists after an examination of the record in the light most favorable to the non-moving party. *Green Valley Dry Cleaners, Inc. v. Westmoreland County Industrial Development Corp.*, 832 A.2d 1143, 1150 n. 5 (Pa. Cmwlth. 2003).

Initially, Camacho contends that the trial court erred in entering summary judgment in favor of the School District when it determined that the parking barrier at issue was not real property under Section 8542(b)(3) of the Act, which provides for a real property exception to governmental immunity for injuries arising out of "[t]he care, custody or control of real property in the possession of the local agency." 42 Pa. C.S. § 8542(b)(3).

The real property exception applies when the actions of a "local agency or its employees make the property unsafe for the activities for which it is regularly used, for which it is intended to be used or for which it may reasonably be foreseen to be used." *Moles v. Borough of Norristown*, 780 A.2d 787, 791 (Pa. Cmwlth. 2001). This Court must look at the facts of the present case and, *inter alia*, compare them to the facts of both *Grieff v. Reisinger*, 693 A.2d 195 (Pa. 1997) and *Blocker v. City of Philadelphia*, 763 A.2d 373 (Pa. 2000), to determine which of their approaches should be applied. *Gillingham v. County of Delaware*, 154 A.3d 875, 878-79 (Pa. Cmwlth. 2017).

In *Grieff*, the Supreme Court looked at whether the injury was caused by the care, custody, or control of the real property itself. The Supreme Court determined that injuries caused by a fire chief's negligence in removing paint by spreading paint thinner across the floor, which caught fire and injured a bystander, was within the real property exception to immunity as "care" of the property. *Grieff*, 693 A.2d at 197. *Grieff* is clearly concerned with the maintenance of the real property itself. *Id.*

In *Blocker*, the Supreme Court determined that a bleacher that plaintiff was sitting on when it collapsed was not a permanent fixture of the real estate but was personalty and, thus, the immunity exception for real property in Section 8542(b)(3) of the Act did not apply. *Blocker*, 763 A.2d at 374-76. "Absent an attachment to realty, a chattel remains personalty." *Id.* at 375. Further, "only where personalty has been attached to realty does the question of the parties' intent become relevant." *Id.*

Here, the facts of the case are more analogous to those of *Blocker*. The injury did not involve maintenance of real property but an item placed on the real property. Neither party suggests that the parking barrier was affixed to the realty. It remained freely moveable and removable. "Absent an attachment to realty, a chattel remains personalty." *Blocker*, 763 A.2d at 375. Thus, because the parking barrier was not affixed to the property, it remained personalty and the trial court did not err in determining that the real property exception to governmental immunity in Section 8542(b)(3) of the Act did not apply.

Next, Camacho contends that the trial court erred in entering summary judgment in favor of the School District when it determined that the parking barrier at issue was not a traffic sign or traffic control device under Section 8542(b)(4) of the Act. 42 Pa. C.S. § 8542(b)(4).

Section 8542(b)(4) of the Act provides an exception to governmental immunity for:

> [a] dangerous condition of trees, traffic signs, lights or
> other traffic controls, street lights or street lighting systems

4

> under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. C.S. § 8542(b)(4). "Official traffic-control devices" are defined in Section 102 of the Vehicle Code as "Signs, signals, markings and devices not inconsistent with this title placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic." 75 Pa. C.S. § 102. A "traffic-control signal" is defined in Section 102 of the Vehicle Code as "A device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed." 75 Pa. C.S. § 102.

Section 8542(b)(4) of the Act refers to traffic "signs" and "controls," not "devices." 42 Pa. C.S. § 8542(b)(4); 75 Pa. C.S. § 102; *see Pettineo v. City of Philadelphia Law Department-Claims Division*, 721 A.2d 65, 67-68 (Pa. Cmwlth. 1998). This Court determined in *Pettineo* that yellow nylon rope tied between trees "to prevent travel altogether onto [the] Street" controlled traffic and was, therefore, representative of an exception to immunity pursuant to Section 8542(b)(4) of the Act. *Pettineo*, 721 A.2d at 68.

Further, in *Glenn v. Horan*, 765 A.2d 426, 429-30 (Pa. Cmwlth. 2001), this Court determined that a crosswalk was a traffic control device because the

5

Vehicle Code[3] defines "'official traffic control devices' as '…markings … for the purpose of regulating, warning or guiding traffic.'" This Court concluded that a crosswalk's painted lines warn motorists that pedestrians may be crossing and, thus, a crosswalk constitutes a traffic control within the meaning of Section 8542(b)(4) of the Act. *Id.* In *Ryals v. City of Philadelphia*, 848 A.2d 1101 (Pa. Cmwlth. 2004), this Court held, in accordance with *Glenn*, that the concrete headers and z-bricks that form a crosswalk are a traffic control device.

On the other hand, in *Garrett v. Moyston*, 562 A.2d 386, 390-91 (Pa. Cmwlth. 1989), this Court determined that a negligently designated bus stop does not constitute a "traffic control" within the meaning of Section 8542(b)(4) of the Act because a driver "cannot 'obey the instructions of' a bus stop." In *Miseo v. Ross Township Police Department*, 607 A.2d 806 (Pa. Cmwlth. 1992), this Court determined that a flare is not an official traffic control device because it does not specify any particular action that a driver must perform.

Importantly, this Court has further determined in *Slough v. City of Philadelphia*, 686 A.2d 62 (Pa. Cmwlth. 1996), that a defective highway median, which a pedestrian upon alighting from a bus tripped on, was not a traffic control device pursuant to Section 8542(b)(4) of the Act. This Court stated that "[a] median or island is a 'traffic control' in only the broadest sense of the term, acting merely as a means of keeping one lane of travel from running into another." *Slough*, 686 A.2d at 65.

---

[3] 75 Pa. C.S. § 102.

In the present case, the concrete parking barrier is not situated on a public roadway. Further, the concrete barrier, like the concrete median in *Slough*, is a traffic control only in the broadest sense of the term, as its function is to delineate the end of a parking space in a parking lot. The barrier is not a sign, signal, marking, or device that was erected to regulate, warn, or guide traffic. It is merely placed as a means of keeping one vehicle from protruding too far into another area or parking space. The trial court did not err in determining that the parking barrier was not a traffic sign or a traffic control device under Section 8542(b)(4) of the Act.

Accordingly, we affirm the trial court's order granting the School District's motion for summary judgment.

_____
J. WESLEY OLER, JR., Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jewel Lee Camacho,           :
         Appellant     :
                           :
      v.                : No. 390 C.D. 2017
                           :
West Chester Area School  :
District                 :

## O R D E R

AND NOW, this 27th day of December, 2017, the order of the Chester County Court of Common Pleas, dated March 1, 2017, in the above-captioned matter is affirmed.

_____
J. WESLEY OLER, JR., Senior Judge