Alfred MORTON

v.

COMMONWEALTH of Pennsylvania DEPARTMENT OF TRANSPORTATION, Southeastern Pennsylvania Transportation Authority and City of Philadelphia

**Appeal of Commonwealth of Pennsylvania, Department of Transportation.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided Jan. 15, 2004.

Howard G. Hopkirk, Harrisburg, for appellant.

Alan C. Ostrow, Philadelphia, for appellee.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY JUDGE FRIEDMAN.

The Commonwealth of Pennsylvania, Department of Transportation (DOT) appeals from the February 25, 2003, order of the Court of Common Pleas, First Judicial District (trial court), which, following a decision finding DOT solely liable for injuries sustained by Alfred Morton (Morton) in a fall on a defective traffic island, denied DOT's post-trial motion for reconsideration or a new trial. We affirm.

On June 22, 2001, Morton filed a civil action against DOT, the Southeastern Pennsylvania Transportation Authority (SEPTA) and the City of Philadelphia (City) for injuries he sustained when he tripped and fell over a pothole on a traffic island in the City. DOT, SEPTA and the City settled the case with Morton and requested the trial court's intervention to determine and apportion liability with regard to payment of the settlement amount.

During the nonjury hearing before the trial court, DOT, SEPTA and the City stipulated to the following relevant facts. In 1973, DOT constructed the traffic island as part of a federal safety program financed by federal funds, with contributions from DOT and the City pursuant to a written agreement allocating the cost of construction between them. The traffic island is a long, narrow, raised concrete island located between Broad Street, a state highway, and Old York Road, a public street under the City's jurisdiction, separating traffic lanes on these streets. The west curb line of the traffic island is adjacent to Broad Street, and the east curb line is adjacent to Old York Road. There is a SEPTA bus shelter on the traffic island, and the island's original east curb line has been altered to widen the travel lane for SEPTA buses along Old York Road.

No evidence was presented to establish which party currently maintains and repairs the traffic island. DOT argued that, because the traffic island is a traffic control device, the City was responsible for its maintenance and repair. The City asserted that DOT built the traffic island adjacent to, and as part of, a state highway and, thus, was responsible for its maintenance. SEPTA contended that it had no legal duty to maintain the traffic island because it did not own, possess or build it and, moreover, that Morton's claims against SEPTA were barred by the doctrine of sovereign immunity.[1]

After considering the stipulated facts and arguments presented by the parties, the trial court, relying on *Slough v. City of Philadelphia*, 686 A.2d 62 (Pa.Cmwlth. 1996) *aff'd*, 553 Pa. 673, 720 A.2d 485 (1998), determined that DOT was solely liable for Morton's claims and ordered DOT to reimburse the City and SEPTA for the amount each contributed toward the settlement. DOT filed a post-trial motion, which the trial court denied. DOT now appeals to this court, arguing that the trial court erred in denying its motion for post-trial relief because it misinterpreted this court's decision in *Slough*.[2] We disagree.

---

1. The trial court agreed with SEPTA's argument that it was in no way liable for Morton's claim. DOT does not challenge that portion of the trial court's decision.

2. Our review of an order denying motions for post-trial relief is limited to whether the trial court abused its discretion or committed an error of law. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (2000).

In *Slough,* this court considered the precise issue involved here, i.e., whether the traffic island is a "traffic control device" for which the City had responsibility or part of the state highway for which DOT alone is responsible. In determining that the median[3] in *Slough* fit the latter category, we stated:

> Pursuant to Section 203 [of the State Highway Act of 1961, Act of September 18, 1961, P.L. 1389, *as amended,* 36 P.S. § 1758–203] DOT would be responsible for maintaining the median on which Slough fell only if it were part of the base or surface course of the roadway. Moreover, under this provision, DOT has no duty to regulate traffic on [a state highway]. If the *purpose* of the median is to regulate or control traffic, then it is within the City's responsibility.... We agree with the trial court that DOT is responsible for maintaining the median in this case. Such a structure is part of the highway, not a traffic control device over which DOT would have no control. We do not agree with the trial court that the City is in any way responsible for maintaining the median as a traffic control Under the regulatory definitions of median and *island* the purpose of such structures is to separate or channelize lanes of travel. A median or *island* is a traffic control in only the broadest sense of the term, acting merely as a means of keeping one lane of travel from running into another. Therefore, strictly construing the phrase traffic control, the City cannot be liable.

*Slough,* 686 A.2d at 64–65 (emphasis added).

3. We note that, in *Slough,* the court did not distinguish between a "median" and "traffic island," as defined in DOT's regulations.

4. DOT also argues that, regardless of the *Slough* decision, the City agreed to assume responsibility for the traffic island's maintenance under a contract that it entered into

DOT acknowledges responsibility for the maintenance of traffic islands and medians which lie between the curb lines of a state-designated highway. DOT argues, however, that it has no maintenance responsibility for the traffic island here because it is located *outside* of Broad Street's curb lines. Essentially, DOT argues that Broad Street ends at the traffic island's curb lines; thus, the entire traffic island is located on Old York Road and is the City's responsibility.

The trial court rejected DOT's attempt to distinguish *Slough* on the basis that the median in that case was surrounded by a state highway. The trial court stated that this factual distinction does not change the *purpose* of a traffic island, which would be the same regardless of whether the traffic island is located between two state highways or, as here, between a state highway and a city street. We agree and reject DOT's argument that *Slough* is not controlling because of the location of the median in that case.

Where DOT has constructed a traffic island located between a state designated highway and a city owned street, it was not an error of law for the trial court to examine the purpose of the traffic island in apportioning liability. Here, the trial court examined the applicable governmental immunity sections and regulatory definitions, and we find no error in its reliance on *Slough.* We cannot conclude that the trial court erred in denying DOT's post-trial motion for relief.

Accordingly, we affirm.[4]

with DOT. We disagree. Before the trial court, the parties stipulated to the fact that there was *no* evidence of an agreement between DOT and the City as to which entity would assume maintenance responsibility for the traffic island. (Trial ct. op. at 3, 10.)

*ORDER*

AND NOW, this 15th day of January, 2004, the order of the Court of Common Pleas, First Judicial District, dated February 25, 2003, is hereby affirmed.

Judge PELLEGRINI concurs in the result only.