# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edwina Redmond,                                    :
                    Appellant                      :
                                                   :    No.  755 C.D. 2017
                    v.                             :
                                                   :    Argued:  June 4, 2018
Commonwealth of Pennsylvania,                      :
Department of Transportation a/k/a                 :
PennDOT and The City of Philadelphia              :
and Southeastern Pennsylvania                      :
Transportation Authority and                       :
Tony DePaul & Son and                              :
Carr and Duff, Inc.                                :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                FILED:  July 26, 2018


Edwina Redmond (Redmond), appeals from the April 28, 2017 order of the Court of Common Pleas of Philadelphia County (trial court), which granted judgment notwithstanding the verdict (judgment n.o.v.) in favor of the City of Philadelphia (City).


## Facts and Procedural History

On July 17, 2013, Redmond was disembarking from a Southeastern Pennsylvania Transportation Authority (SEPTA) bus at the bus stop located at the

northwest corner of the intersection of 52nd Street and Market Street in Philadelphia, Pennsylvania. (Reproduced Record (R.R.) at 197a.) Although 52nd Street was a highway operated by the Commonwealth of Pennsylvania, Department of Transportation (PennDOT), at the time in question, a public works project jointly conducted by PennDOT and the City was in progress. (R.R. 298a.) The project, which was part of the Market Street Streetscape, began in May 2011 and involved the installation of a traffic signal conduit. The City funded 20% of the project, and PennDOT funded the remaining 80%. PennDOT accepted bids for the project, ultimately awarding the contract to the City. The City, through its Department of Streets, contracted with Tony DePaul & Son (DePaul) to perform the trenchwork. (ECMS Highway Construction Contract 17657 (ECMS Contract); City's brief at Suppl. App. 2a.) While the project was ongoing, the City employed an on-site "resident engineer," Kevin Judge, who was responsible for reviewing all work performed to ensure that the work satisfied the contract specifications.

The project on 52nd Street included the excavation of a conduit trench "from the center of Market Street, north onto 52nd Street for over 100 feet." (Redmond's brief at 7; R.R. at 260a.) As the project progressed, the trench was "backfilled then subsequently patched, fully restored, and/or milled and repaved in varying segments at varying times." (*Id.*; R.R. at 260a-66a.) After receiving complaints about the trench's safety, the City sent the contractors an email requesting that the trench be made safe until the weather allowed the issues to be fixed on a permanent basis. (R.R. at 274a.) In response, the contractors utilized a cold-patch to "partially restore the trench, but this was done in fragments due to cars being parked over the trench." (Redmond's brief at 7; R.R. at 266a.)

Prior to Redmond's fall, "the intersection from the center of Market Street, north onto 52nd Street was eventually repaved by the contractors 'curb to curb' pursuant to the contract with the City." (*Id.*; R.R. at 269a-70a.) Mr. Judge oversaw the re-paving and ultimately accepted the contractors' work on the City's behalf. (R.R. at 304a.)

When Redmond was disembarking from the bus, she was forced to exit onto the roadway because the bus was allegedly curbed improperly. While she was doing so, she slipped and fell. (R.R. at 198a-99a.) Redmond suffered serious bodily injuries, including a right ankle tri-malleolar fracture, as a result of the fall, and her ankle injury required open reduction internal fixation. (Redmond's brief at 6.)

Redmond filed a civil complaint against the City, SEPTA, and PennDOT on October 14, 2014. (R.R. at 5a.) DePaul was added as a defendant in Redmond's first amended complaint. Another subcontractor, Carr and Duff, Inc. (Carr), was added as a defendant in Redmond's second amended complaint filed on August 31, 2015. (R.R. at 46a.) Redmond's allegations of negligence against the City were secondary to and derivative of the alleged actions of DePaul and Carr. (City's brief at 4.)

During the course of the litigation, one of the highly contested issues between the parties was the "extent of the paving limits." (Redmond's brief at 7.) The City presented expert testimony, which relied upon physical measurements based off the contract specifications, to argue that Redmond's fall occurred within the area that had been paved and, therefore, her fall was not a result of a dangerous condition. On the other hand, Redmond used video evidence and physical landmarks to assert that the area in which she fell was not re-paved and that her fall was caused by the dangerous road condition resulting from the trenching and "piecemeal" repair. *Id.* at 31.

3

Specifically, she argued that her fall occurred where the road was cold-patched and not re-paved.

Upon the conclusion of the discovery period, all defendants filed motions for summary judgment. Redmond opposed each motion. (R.R. at 22a-25a.) DePaul and Carr filed a joint motion to discontinue, requesting discontinuance of all claims and crossclaims against them pursuant to a stipulation reached with Redmond. On June 17, 2016, the trial court issued orders granting summary judgment as to DePaul and Carr and denying the City's request for summary judgment. (R.R. at 27a-28a.) The trial court also granted the motion to discontinue, and all claims and crossclaims against DePaul and Carr were discontinued with prejudice. *Id.*

City filed a motion for reconsideration, asking the trial court to reconsider the denial of its motion for summary judgment. The trial court granted the motion and reversed its order denying City's motion for summary judgment. Redmond then filed her own motion for reconsideration, which was granted, and the trial court reversed its order granting City's motion for judgment. After City filed a second motion for reconsideration, the trial court conducted oral argument and once again denied City's request for summary judgment.

On January 3, 2017, the parties executed a stipulation of dismissal with prejudice as to SEPTA. (R.R. at 75a-76a.) A jury trial commenced on January 4, 2017, and continued through January 10, 2017. At the time of the trial, City was the only defendant remaining in the case;[1] however, all parties were listed on the verdict sheet. (R.R. at 537a-42a.) At the close of Redmond's case, the City moved for a compulsory

---

[1] Both DePaul and Carr were removed from the case by judgment as a matter of law. SEPTA was dismissed from the case by virtue of a stipulation with Redmond. PennDOT was dismissed from the case based upon a settlement reached with Redmond.

4

nonsuit. (R.R. at 330a-34a; 336a.) The trial court denied that motion. (R.R. at 336a.) At the close of its own case, the City made a motion for directed verdict, which the trial court denied. (R.R. at 336a.)

After argument, the trial court held a charge conference at which time it explained that it would instruct the jury that certain parties were no longer part of the case but would appear on the verdict sheet. Redmond objected. The trial court also stated that it would instruct the jury that it should not find the City liable unless it finds the subcontractors to be negligent. Redmond did not object. (R.R. at 425a-29a.)

Ultimately, the trial court instructed the jury that (1) it should not find the City liable unless it found that the subcontractors were negligent; and (2) to establish liability, Redmond had to show that the City retained control over the manner or operational details of the work that allegedly caused Redmond to fall. (R.R. at 495a.)

The jury asked to review the SEPTA video of the incident during its deliberations. (R.R. at 514a-18a.) The jury returned a verdict finding the City and SEPTA to be negligent, apportioning 40% liability to the City and 60% liability to SEPTA. The jury did not find DePaul, Carr, or PennDOT to be negligent, and it did not find Redmond to be contributorily negligent. The jury determined that the City's negligence was the factual cause of Redmond's slip and fall injuries and awarded her damages in the amount of $155,000. The verdict resulted in $62,000 in damages against the City. (R.R. at 520a-23a.)

After the jury rendered the verdict, the City filed a motion for post-trial relief requesting judgment n.o.v. The trial court granted the motion, and entered judgment n.o.v. in the City's favor on April 28, 2017. (R.R. at 647a.) Redmond timely appealed to this Court. (R.R. at 649a-60a.)

5

## Discussion

On appeal,[2] Redmond asserts that the trial court erred by (1) awarding judgment n.o.v. to City because, when considering the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner, it is clear that the City was not entitled to judgment as a matter of law because Redmond produced sufficient evidence to waive the City's entitlement to governmental immunity; and (2) including SEPTA on the verdict sheet, where SEPTA had been dismissed from the matter with prejudice by stipulation of the parties.[3]

### Governmental Immunity Under the Tort Claims Act

Redmond first asserts that the trial court erred in granting the City's request for judgment n.o.v. because the evidence she presented was sufficient to demonstrate that the City was not protected by governmental immunity based upon the

---

[2] Our review of a trial court's order granting a party's post trial motion for judgment n.o.v. is limited to determining whether the trial court abused its discretion or committed legal error. *Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921, 924 (Pa. Cmwlth. 2000). When we review a motion for judgment n.o.v., we must consider the evidence in the light most favorable to the verdict winner, who must receive "the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992) (citing *Broxie v. Household Finance Co.,* 372 A.2d 741, 745 (Pa. 1977)). Any doubts must be resolved in favor of the verdict winner, and judgment n.o.v. should only be entered in a clear case. *Id.* Finally, "a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations." *Id.* (citing *Brown v. Shirks Motor Express*, 143 A.2d 374, 379 (Pa. 1958)).

[3] In her Rule 1925(b) statement, Redmond asserts that the City was not entitled to judgment n.o.v. on an agency theory because there was sufficient evidence presented at trial to attribute independent negligence to the City. However, she neither raises nor addresses this issue in her brief on appeal. Therefore, we will not address a challenge to the trial court's order on this basis. *See Purple Orchid, Inc. v. Pennsylvania State Police*, 813 A.2d 801, 804 (Pa. 2002) (explaining that issues not addressed and developed in an appellate brief are waived).

6

"streets" exception to the doctrine of governmental immunity. Redmond further alleges that the trial court failed to properly apply the standard for judgment n.o.v., arguing that the trial court did not review the record in the light most favorable to the verdict winner.

Under Pennsylvania's Political Subdivision Tort Claims Act (Tort Claims Act), "no local agency shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person." 42 Pa.C.S. §8541. However, "a local agency shall be liable for damages if: (1) the damages would be recoverable under common law or a statute creating a cause of action if caused by a person without immunity; (2) the injury was caused by a local agency or an employee thereof; and (3) the negligent act falls within an exception enumerated in section 8542(b) of the Judicial Code." *Lacava v. Southeastern Pennsylvania Transportation Authority*, 157 A.3d 1003, 1009 (Pa. Cmwlth.), *appeal denied*, 174 A.3d 571 (Pa. 2017). *See also* 42 Pa.C.S. §8542(a). Exceptions to immunity must be narrowly interpreted, given the express legislative intent to insulate political subdivisions from tort liability. *Mascaro v. Youth Study Center*, 523 A.2d 1118, 1123 (Pa. 1987).

Section 8542(b)(6) of the Tort Claims Act states that liability may be imposed on a local agency for:

(6) Streets.—

(i) A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to

7

have taken measures to protect against the dangerous condition.

(ii) A dangerous condition of streets owned or under the jurisdiction of Commonwealth agencies, if all of the following conditions are met:

(A) The local agency has entered into a written contract with a Commonwealth agency for the maintenance and repair by the local agency of such streets and the contract either:

(I) had not expired or been otherwise terminated prior to the occurrence of the injury; or

(II) if expired, contained a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work.

(B) The injury and dangerous condition were directly caused by the negligent performance of its duties under such contract.

(C) The claimant must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. §8542(b)(6).

Subsection (ii) of section 8542(b)(6) is relevant in this case because it is undisputed that the Commonwealth—not the City—owns 52nd Street. (Redmond's brief at 15-16; City's brief at 22.) The question then becomes whether all remaining requirements of section 8542(b)(6)(ii) have been met.

First, there must be a written contract between the City and the Commonwealth "for the maintenance and repair by the [City] of such streets." 42 Pa.C.S. §8542(b)(6)(ii)(A). This contract must either be in effect at the time of the injury, 42 Pa.C.S. §8542(b)(6)(ii)(A)(I), *or*, if expired, must contain "a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work," 42 Pa.C.S. §8542(b)(6)(ii)(A)(II).

The City contends that no written contract between the City and the Commonwealth, as required by section 8542(b)(6)(ii)(A)(II), exists to establish that the City took over the repair and maintenance of 52nd Street. Rather, the City represents that any such contract, namely ECMS Contract 17657, only exists between the City and the subcontractors, and that the language of that contract, as cited by Redmond, does not establish that the City took over the care, custody, and control of the project work and area. The City also notes that Redmond also relied upon the Acceptance Certificate, (R.R. at 531a-33a), but that such certificate does not establish a contract between the City and the Commonwealth.

The City and the trial court both rely upon our decision in *Leiphart v. City of Philadelphia*, 972 A.2d 1239 (Pa. Cmwlth. 2009). In *Leiphart*, the plaintiff pedestrian tripped and fell on a raised portion of a street, resulting in serious injuries. The raised pavement was caused by prior excavation work by one of several permit recipients. The plaintiff brought suit against the Commonwealth, the City of Philadelphia, and two permit holders. The trial court found the City to be liable for the

plaintiff's injuries under the "streets" exception to sovereign immunity, 42 Pa.C.S. §8542(b)(6)(i), reasoning that the City was responsible for the dangerous/defective condition because it owned the street; the City oversaw the work performed; the City inspected the work, making the risk of a fall reasonably foreseeable and giving the City actual notice of the dangerous condition; and the City had reasonable time to correct the condition. The trial court rejected the City's argument that a written contract between the City and the Commonwealth must exist pursuant to 42 Pa.C.S. §8542(b)(6)(ii)(A).

On appeal, we focused our analysis on section 8542(b)(6)(ii)(A), finding that, where the Commonwealth took over ownership of a street, "the [c]ity is not liable for injuries that occurred as to negligent maintenance . . . except where the [c]ity has by written agreement agreed to maintain the state road." *Leiphart*, 972 A.2d at 1243. We found that, to fall within the "streets" exception, the plaintiff "had to prove, among other things, the existence of a written contract between the [c]ity and PennD[OT] for the maintenance and repair of [the] [s]treet." *Id.* at 1244. We concluded that, "[b]ecause [the plaintiff] failed to produce any evidence that a contractual relationship between the [c]ity and the Commonwealth/PennD[OT] existed, [she] did not prove that her action fell within the exception to immunity contained in 42 Pa.C.S. §8542(b)(6)(ii)." *Id.*; *see also Leone v. Department of Transportation*, 780 A.2d 754, 758 (Pa. Cmwlth. 2001) (finding that the plaintiffs "failed to present any evidence that the Commonwealth had contracted with the [c]ity for the maintenance and repair of [the street], a state highway," and that "correspondence between PennD[OT] and the [c]ity does not represent a contractual relationship regarding road maintenance as required to invoke the street exception").

Redmond contends that *Leiphart* is distinguishable from the case before us and that the trial court erred in its reliance on *Leiphart*. Redmond asserts that, in *Leiphart*, "none of the excavation work being performed [in that case] was pursuant to a public works project or contract." (Redmond's brief at 26.) Further, Redmond argues that "none of the work was being performed by, for, or at the behest of the [c]ity . . . and [t]he [c]ity . . . did not have care, custody, control and discretion over the work site" and "the [c]ity's only role and relationship to the dangerous condition at issue was having [to] issue permits for the work." *Id.*

While Redmond asserts she fell on a partially-restored conduit trench that was made on a state highway "pursuant to a public works contract known as the Market Street Streetscape" between the City and the Commonwealth/PennDOT and that the work under the contract was performed by the City, she argues that the City hired the contractors, and supervised, controlled, and approved their work. *Id.* She represents that, at the time she fell, "the project, subject excavation[,] and roadway were in the City['s] [ ] care, custody, control[,] and jurisdiction." *Id.* at 27.

We disagree with Redmond's reading of the *Leiphart* case. Similar to the *Leiphart* plaintiff, Redmond presents us with no written contract to establish that, as part of the Market Street Streetscape project, the City contracted with PennDOT to undertake the maintenance and repair of 52nd Street. While Redmond contends that such a public works contract exists, the record is devoid of any evidence to support this contention. Instead, the ECMS Contract 17657 cited by Redmond clearly provides that the agreement is between "the City of Philadelphia Department of Streets of the Commonwealth of Pennsylvania, Philadelphia County, hereinafter called the Sponsor, and Tony DePaul and Son his, hers, its or their executors, administrators, successors,

11

or assigns, hereinafter called the Contractor." (ECMS Contract 17657; City's brief at Suppl. App. 2a.)

Furthermore, we disagree with Redmond that certain language of ECMS Contract 17657 establishes the existence of a written contract between PennDOT and the City sufficient to meet the requirement of section 8542(b)(6)(ii)(A) of the Judicial Code. Specifically, Redmond cites to the following language of ECMS Contract 17657, "The Commonwealth will open bids and award the contract in the name of City of Philadelphia. The contractor is advised that the contract will be executed by this above Municipality." (*Id.* at Suppl. App. 4a.) However, such language does not evidence a written contract between PennDOT and the City. To the contrary, the plain language reflects that the City will execute the contract and, as noted above, the contract specifically stated that it was between the City and DePaul. Additionally, this portion of ECMS Contract 17657 goes on to state that "all payments made to the Contractor for work performed" will come from the City and that PennDOT would only be involved with the "prequalification of bidders," as well as the opening of bids. *Id.*

Moreover, Redmond's reliance on our decision in *Miranda v. City of Philadelphia*, 646 A.2d 71 (Pa. Cmwlth. 1994), is also misplaced. The *Miranda* case involved the excavation of a state highway, which was located in the City of Philadelphia, by a gas company. The plaintiff fell into the excavation site and commenced a negligence action against PennDOT and the City. Notably, upon agreement of the plaintiff, the City was dismissed from the action. We ultimately held that PennDOT had sovereign immunity from the plaintiff's negligence action, absent any assertion of active fault on the part of PennDOT, and that the negligence of the gas company in allowing the street to remain in an allegedly dangerous condition was a

12

superseding cause that precluded any liability of PennDOT based upon its ownership of the street. Thus, the "negligence of another party," that Redmond cites in the *Miranda* case, was *not* the negligence of the City, but the negligence of an independent third party, namely, the gas company.

Having found that the "streets" exception does not apply in this case, we shall turn to Redmond's alternate argument that the "trees, traffic controls, and street lighting" exception to governmental immunity applies. 42 Pa.C.S. §8542(b)(4). Section 8542(b)(4) provides:

> (4) Trees, traffic controls and street lighting.—
>
> A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. §8542(b)(4). In asserting this argument, Redmond contends that the traffic signal conduit trench is a "traffic control." She directs our attention to section 541(1) of the State Highway Law,[4] which provides that "[t]he designation or taking over of any street of any City of the first or second class as a State highway by any act of Assembly is not intended and shall not be construed . . . [t]o place upon the Commonwealth any duty to regulate traffic or police any such streets, but such duty shall be and remain the obligation of the cities." 36 P.S. §670-541(1).

---

[4] Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §670-541(1).

13

The City asserts that Redmond waived any argument under section 8542(b)(4) of the Tort Claims Act because she failed to raise it prior to this appeal. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). A review of the record reveals that Redmond failed to raise this issue before the trial court. Hence, we agree with the City that this issue was waived.

However, even if not waived, we note that this argument would fail. We have previously held that the "traffic control" exception "must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability." *Slough v. City of Philadelphia*, 686 A.2d 62, 64 (Pa. Cmwlth. 1996), *aff'd*, 720 A.2d 485 (1998). In considering this exception, we must first determine whether a traffic signal conduit trench is a "traffic control" for purposes of the State Highway Law. We conclude that it is not. While section 8542(b)(4) does not define a "traffic-control signal" or "official traffic-control device," we have previously turned to section 102 of Pennsylvania's Vehicle Code for guidance. The Vehicle Code defines a "traffic-control signal" as "[a] device, whether manually, electrically or mechanically operated, by which traffic is alternatively directed to stop and permitted to proceed." 75 Pa.C.S. §102. "Official traffic-control devices" are defined as "[s]igns, signals, markings, and devices . . . for the purpose of regulating, warning or guiding traffic." *Id.*

In the *Slough* case, we considered whether a median was a "traffic control" for purposes of the "traffic control" exception of section 8542(b)(4). We explained that "[t]he Vehicle Code definitions for traffic control signal and official traffic control device do not include any reference to a median, which is certainly not a device, sign, signal, or marking," and that "[a] median . . . is a 'traffic control' in

14

only the broadest sense of the term, acting merely as a means of keeping one lane of travel from running into another." 686 A.2d at 65. As such, we concluded that, "strictly construing the phrase 'traffic control,' as used in the Section 8542(b)(4) exception to governmental immunity, the [c]ity [could not] be liable for the dangerous condition of the median." *Id.*

The same rationale applies in Redmond's case. The traffic signal conduit trench is likewise not a device, sign, signal, or marking that falls within the Vehicle Code's definition of a traffic control device. Strictly interpreting the exception, the conduit trench is also not a "device, whether manually, electrically or mechanically operated, by which traffic is alternatively directed to stop and permitted to proceed." 75 Pa.C.S. §102. Thus, even if the issue were not waived, we would conclude that the "traffic control" exception to the Tort Claims Act does not apply here.[5]

### Inclusion of SEPTA on Verdict Sheet

Finally, Redmond argues that the trial court erred by including SEPTA on the verdict sheet, where SEPTA had been dismissed, with prejudice, from the action by stipulation of the parties including the City.[6] After discovery, Redmond concluded that SEPTA was protected from liability in this matter through governmental

---

[5] Redmond fails to cite any relevant authority to support her argument that the "traffic control" exception applies here, as the cases she cites do not pertain to the "traffic control" exception of the Tort Claims Act. In *City of Philadelphia v. Messantonio*, we held that "although the [c]ity had no initial duty to erect and maintain *traffic controls* at [the] intersection, once it undertook this discretionary duty, it was required to erect and control the *traffic signals* in a non-negligent manner." 533 A.2d 1127, 1128 (Pa. Cmwlth. 1987) (emphasis added). In *Metropolitan Edison Company v. City of Reading*, 162 A.3d 414 (Pa. 2017), our Supreme Court considered the "utilities" exception to the Tort Claims Act, not the "traffic controls" exception.

[6] On appeal, we must review the trial court's decision to include SEPTA on the verdict sheet for an error of law or abuse of discretion. *See Herbert v. Parkview Hospital*, 854 A.2d 1285, 1288 (Pa. Super. 2004).

15

immunity. Redmond agreed to execute a stipulation with SEPTA to dismiss it from the action. The City executed the agreement on the eve of trial. Redmond alleges that the trial court mistakenly assumed that she and SEPTA reached a settlement, rather than merely an agreement regarding dismissal with prejudice. In support of this contention, she directs this Court's attention to the trial court's opinion, wherein it states that "PennD[OT] and SEPTA settled out of the case prior to trial." (R.R. at 689a; Redmond's brief at 36.) With SEPTA appearing on the verdict sheet, the jury found SEPTA to be 60% liable for Redmond's injuries.

On the other hand, the City asserts that the trial court did not err or abuse its discretion. The City argues that it is irrelevant whether SEPTA was dismissed from the case by stipulation or was protected by governmental immunity, noting that the record allowed the jury to find SEPTA responsible for negligence because the driver failed to properly curb the bus. In other words, the City contends that the issue for the jury's consideration was whether SEPTA was negligent and to what extent—not whether it could assert the legal defense of governmental immunity. (City's brief at 49.)

A similar situation was addressed by our Superior Court in *Herbert v. Parkview Hospital*, 854 A.2d 1285, 1288 (Pa. Super. 2004). In that case, the administratrix of a decedent's estate commenced a medical malpractice action against a hospital and three doctors. Before trial began, one doctor was dismissed from the case and the administratrix entered into a release agreement with all other defendants but for one doctor (Nickey). A trial proceeded against Nickey alone. The jury returned a verdict in favor of the administratrix, assigning only 10% of the liability to Nickey. Subsequently, both the administratrix and Nickey filed post-trial motions. The administratrix argued that the trial court erred in including the names of the parties to

16

the release agreement on the verdict sheet, thereby permitting the jury to assign liability to the settled parties. The trial court denied the post-trial motions and cross-appeals were filed.

With respect to the appeal of the administratrix, the Superior Court determined that the trial court neither erred nor abused its discretion in including the settled parties on the verdict sheet, citing the Uniform Contribution Among Tortfeasors Act in support of its conclusion:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

42 Pa.C.S. §8326; *see also National Liberty Life Insurance Company v. Kling Partnership*, 504 A.2d 1273, 1277-78 (Pa. Super. 1986) ("Cross-claims for contribution are . . . unnecessary in order to retain the settling defendants as parties to the litigation for the sole purpose of determining the extent, if any, of [non-settling defendant's] right, pursuant to the joint tort[-]feasor release, to a reduction in any verdict rendered against it after trial . . . .").

As the Superior Court did in the *Herbert* case, we must consider Redmond's argument regarding the inclusion of SEPTA on the verdict sheet by considering whether the evidence presented at trial against SEPTA was sufficient to warrant submission of SEPTA to the jury for apportionment of liability.[7] *See Herbert*,

---

[7] We acknowledge that in *Herbert* the relevant defendants settled with the plaintiff and that, in Redmond's case, SEPTA was dismissed by stipulation of the parties. However, we find such a distinction irrelevant to our analysis.

17

854 A.2d at 1290. This requires us to determine "whether the trial court abused its discretion in implicitly finding sufficient evidence to justify a jury finding that [SEPTA] [was] partially liable for [Redmond's] harm." *Id.* (citing *Poleri v. Salkind*, 683 A.2d 649, 653 (Pa. Super. 1996)). Thus, we must consider whether the elements necessary to support a finding of SEPTA's negligence were in evidence prior to submission of the case to the jury. *See id.*

In its Rule 1925(a) opinion, the trial court outlined the evidence of record that could establish a *prima facie* case of negligence against the SEPTA bus driver. Taneesha Brown, a witness to Redmond's fall, testified that the bus did not properly pull up all the way to the curb and, that if it had done so, Redmond would not have stepped onto the street. (Notes of Testimony (N.T.), 1/5/17, at 73-74.) Redmond testified that the curbing of the bus resulted in a gap the size of a car width between the bus and the curb. (*Id.* at 85.) The parties did not dispute that the at-issue trench was located on the street—not the sidewalk, and that Redmond stepped and fell into that trench. It is also undisputed that the bus driver was a SEPTA employee. Based on the evidence of record cited by the trial court, we conclude that sufficient evidence did exist on the record to warrant submission of SEPTA to the jury for apportionment of liability.

The City further asserts that, regardless of whether the trial court erred, such error was harmless because the City was entitled to judgment n.o.v. on the merits. We agree. The trial court was justified in finding that, as a matter of law, the City was protected from liability, in this case, by governmental immunity. Accordingly, the trial court found that no reasonable jury could have reached the verdict it reached and, by

18

entering judgment n.o.v., the trial court essentially vacated the jury's determination that the City was liable in any way to Redmond.[8]

**Conclusion**

Based on the foregoing, we conclude that the trial court did not err in awarding judgment n.o.v. to the City, as the City is protected from liability by governmental immunity. Further, neither the "streets" exception nor the "traffic controls" exception apply in this case. We also find that the trial court did not commit an error of law or abuse its discretion by including SEPTA on the verdict sheet, regardless of the fact that SEPTA was dismissed from the matter with prejudice by stipulation of the parties.

Accordingly, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in this decision.

---

[8] We also find merit to the City's argument that Redmond did not preserve the verdict sheet issue for appeal because she did not file a cross-motion for post-trial relief pursuant to Rule 227.1(c) of the Pennsylvania Rules of Civil Procedure. The City correctly notes that Redmond did not request any relief as to the issue either orally (after the verdict) or by raising the issue in her post-trial brief.

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Edwina Redmond, : | |
|              Appellant : | |
| : | No. 755 C.D. 2017 |
| v. : | |
| : | |
| Commonwealth of Pennsylvania, : | |
| Department of Transportation a/k/a : | |
| PennDOT and The City of Philadelphia : | |
| and Southeastern Pennsylvania : | |
| Transportation Authority and : | |
| Tony DePaul & Son and : | |
| Carr and Duff, Inc. : | |

## ***ORDER***

AND NOW, this 26th day of July, 2018, the order of the Court of Common Pleas of Philadelphia County, dated April 28, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge